THE CITY OF ROCKFORD, Plaintiff-Appellee, v. UNIT SIX OF THE POLICEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION OF ILLINOIS, Defendant-Appellant (Steven B. Johnson, Defendant).

Second District    No. 2—05—0467

Opinion filed December 27, 2005.

Timothy D. O'Neil, of Foote, Meyers, Mielke & Flowers, L.L.C., of Geneva, for appellant.

Patrick W. Hayes and John P. Giliberti, both of City of Rockford Department of Law, of Rockford, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

The Rockford Board of Fire and Police Commissioners (the Board) terminated defendant, Rockford police officer Steven B. Johnson, who is not a party to this appeal, for informing a friend that a felony bench warrant had been issued against him and that police had been dispatched to arrest him. Johnson unsuccessfully appealed his discharge to the trial court but did not seek appellate review. After his discharge, defendant, Unit Six of the Policemen's Benevolent and Protective Association of Illinois (the Union), filed a grievance demanding arbitration and reinstatement of Johnson pursuant to a collective bargaining agreement (CBA). The present action was brought by plaintiff, the City of Rockford, for a declaratory judgment and a stay of arbitration, following the Union's notice of intent to file the grievance demanding arbitration and reinstatement of Johnson. The trial court granted the City's motion for summary judgment on the basis of *res judicata*, judicial economy, and the CBA. The Union contends that *res judicata* does not bar arbitration and that the CBA requires that the Board's termination of police officers is subject to arbitration. Because we find that *res judicata* precludes the Union from filing the grievance seeking reinstatement of the officer, we need not address the second issue.

## BACKGROUND

■ Before proceeding, we first address the Union's request to strike the City's statement of facts because it contains argumentative and unnecessary facts that rise to the level of inflammatory and immaterial in violation of Supreme Court Rule 341(e)(6) (Official Reports

Advance Sheet No. 21 (October 17, 2001), R. 341(e)(6), eff. October 1, 2001). We disagree with the Union's criticism. In fact, we find most of the facts to be relevant and helpful to our understanding of the proceedings below. Accordingly, we deny the Union's request.

## Board Proceedings

On April 30, 2003, Steven B. Pugh, the chief of the City of Rockford police department, filed a disciplinary complaint with the Board against Johnson for his violation of various City police rules and regulations by calling a friend to notify and warn him that there was a warrant for his arrest and that police officers were coming to arrest him. Evidentiary hearings were held before the Board on the charges of serious misconduct filed against Johnson. The City sought Johnson's discharge.

At the time of the hearing, Johnson was a member of the Union. A Union representative was present throughout the hearing. Among the witnesses who testified for Johnson was City police sergeant Douglas Block, who is also president of the Union. He testified about his interpretation of article 15.9(A) of the CBA and asserted that it provided that punishment for Johnson's misconduct should be progressive and corrective. Johnson's counsel also argued that, if the Board were to find that Johnson engaged in the misconduct, article 15.9(A) required progressive and corrective punishment rather than termination. Counsel also introduced the CBA into evidence. On August 27, 2003, the Board found that Johnson engaged in serious misconduct and terminated Johnson, thereby implicitly rejecting Block's and Johnson's article 15.9(A) progressive discipline argument.

## Grievances

On September 4, 2003, approximately four months after the charges were filed against Johnson, the Union filed a labor grievance with Deputy Chief Steve Jones. The grievance alleged that the Board violated article 15.9(A) of the CBA in connection with Johnson's discharge by failing to progressively discipline him. On September 26, 2003, the Union filed an amendment seeking Johnson's reinstatement to his job, claiming that the Board could not discharge Johnson. The grievance was denied on September 26, 2003. In denying the grievance, Deputy Jones commented that Johnson raised the issue of progressive discipline in his defense before the Board and that the Board still felt termination was the appropriate discipline. Jones further commented that nothing in the CBA was to be construed as delegating to others the authority vested in the Board; that the Board had exercised its authority repeatedly to suspend and terminate officers found guilty of various types of misconduct; and that never has

the discipline of the Board been challenged through the grievance procedure or at the bargaining table on the basis of progressive discipline.

## Administrative Review

On September 29, 2003, three days after the Union filed its amended grievance, Johnson appealed his discharge by the Board to the trial court. He presented the same argument as the Union presented in its labor grievance: that article 15.9(A) requires progressive discipline. Both Johnson's appeal and the Union's grievance sought Johnson's reinstatement.

## Declaratory Judgment and Stay of Arbitration

The following day, on September 30, 2003, the Union demanded labor arbitration for the grievance. In response, on October 23, 2003, the City filed a complaint in the trial court against the Union and Johnson for a declaratory judgment and permanent stay of arbitration on the grievance. The case remained idle for approximately five months.

While the declaratory judgment case remained idle, on May 20, 2004, the trial court on administrative review ruled on Johnson's appeal of his discharge, affirming the Board's findings and order terminating Johnson's employment, thereby implicitly rejecting Johnson's article 15.9(A) progressive discipline argument. Johnson chose not to appeal the trial court's order on administrative review to this court.

After the trial court's final judgment on Johnson's appeal in administrative review, activity resumed on the declaratory judgment action. The City filed an amended complaint. Count I asserts that *res judicata* bars the Union's labor grievance. Count II, pled in the alternative, asserts that section 10—2.1—17 of the Illinois Municipal Code (Code) (65 ILCS 5/10—2.1—17 (West 2002)) also bars arbitration.

On November 12, 2004, Johnson defaulted by failing to answer the amended complaint. Accordingly, the trial court granted the City's requested relief against Johnson—a declaratory judgment and permanent stay of labor arbitration of the Union's grievance.

Thereafter, the City and the Union filed cross-motions for summary judgment. Incorporated with the City's motion is a sworn affidavit from the City's legal director, Ronald N. Schultz, who avers that throughout his approximate 23-year tenure with the City, "just cause" for discipline of the City police officers has always been litigated solely before the Board. Following the submission of response briefs, motions to strike, and motions to amend the pleadings, the trial court allowed the Union to add collateral estoppel as an affirmative defense.

On April 8, 2005, the trial court granted the City's motion for summary judgment. The court found the elements of res judicata present, including the identity of parties or their privies. The court found it important that neither the Union nor Johnson ever sought to stay the disciplinary proceedings before the Board so that the issues of which the Union complained could be resolved before proceeding further. The record reflected that the Union had a representative present throughout the hearing before the Board, and the court noted that both defendants were aware from at least the time of the commencement of the hearing before the Board that the City was seeking to discharge Johnson. The court further observed that Johnson's counsel argued that article 15.9(A) required that the Board use progressive discipline but "[n]evertheless, [the Union] chose to allow the very extensive Board hearing to proceed to completion. [The Union] only acted after the adverse ruling from the Board by filing a grievance."

The court further found that the Union's claim that the CBA provides the only means to discharge City police officers failed on the merits. The court indicated that section 10—2.1—17 of the Code discusses the discharge of a police officer and that such discharge shall be by the Board, unless the employer and the labor organization representing the officer have negotiated an alternative or supplemental form of due process. The court's review of the case law and the various articles in the CBA found that the City and the Union had not negotiated to replace the Board's power to discharge with arbitration. Therefore, the court also rejected the Union's contention that article 15.9(F) provides for an alternative or supplemental form of due process. Accordingly, the court permanently enjoined the Union from proceeding to arbitration on the issue of Johnson's discharge. The Union timely appeals.

## ANALYSIS

Since the parties filed cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Aryainejad v. Economy Fire & Casualty Co.*, 278 Ill. App. 3d 1049, 1051 (1996). On appeal from the entry of summary judgment, the standard of review is *de novo*. *Aryainejad*, 278 Ill. App. 3d at 1051.

■ On appeal, the Union contends that the trial court erred in finding that its grievance claim was barred by the doctrine of *res judicata*. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to

them constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). *Res judicata* applies when: (1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity of parties or their privies; and (3) there is an identity of cause of action. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 411 (2002). "*Res judicata* promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004). The bar extends to all matters that were offered to sustain or defeat a claim in the first action, as well as to all matters that could have been offered. *Arvia*, 209 Ill. 2d at 533.

■ The right to pursue labor arbitration is limited by the effect of the *res judicata* doctrine. *Peregrine Financial Group, Inc. v. Ambuehl*, 309 Ill. App. 3d 101, 107 (1999). Where such actions involve issues previously reached, they are barred notwithstanding the parties' contractual right to bring them. *Peregrine Financial Group*, 309 Ill. App. 3d at 107.

### Final Judgment on the Merits

The parties do not dispute the first element of *res judicata*, that there was a final judgment on the merits rendered by a court of competent jurisdiction when the trial court affirmed the Board's discharge of Johnson in the administrative review action. In fact, the Union's counsel agreed during oral argument before the trial court that there was a final judgment on the merits. The parties, however, disagree with respect to the existence of the other two prerequisites to *res judicata*. Accordingly, we will address each respectively.

### Identity of Cause of Action

■ The Union asserts that the identity requirement has not been established. The supreme court adopted the transactional test for determining whether causes of action are the same for purposes of *res judicata*. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Under the test, separate claims are considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. *River Park*, 184 Ill. 2d at 311, citing *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 312 (1992).

Although decided prior to *River Park*, *Peoria Firefighters Local 544 v. Korn*, 229 Ill. App. 3d 1002 (1992), illustrates the application of the transactional test in a factual situation similar to the present case. In *Peoria Firefighters*, the petitioners, two firemen, were discharged

for misconduct, following a hearing before the fire and police commission. The petitioners filed for administrative review. The petitioners also filed a labor grievance and proceeded until the union notified the City of Peoria that it was submitting the matter to labor arbitration. By mutual agreement, submission of the grievance was delayed until the administrative review litigation was completed. After the police and fire commission's decision was upheld by the appellate court, the City of Peoria refused the union's request for arbitration. The union's petition to compel arbitration was dismissed by the City of Peoria, and the union appealed. In determining that *res judicata* barred the union's petition, the reviewing court stated:

> "Petitioners argue that the doctrine of *res judicata* does not apply to the instant case because the proceedings before the Board and courts involved issues different from those which would be addressed in an arbitration hearing. They attempt to differentiate between the 'just cause' standard for discharge which would be applied by an arbitrator under the agreement and the standard which was applied by the Board and the courts in the prior litigation. We find, however, that no such distinction exists.
> ***
> In sum the underlying facts of the instant case are identical. The relief sought is also identical. This court therefore will not engage itself in a semantical exercise in order to skirt the judicially created doctrine of *res judicata*. Accordingly, the trial court correctly dismissed the petition to compel arbitration." *Peoria Firefighters*, 229 Ill. App. 3d at 1005-06.

Here, in the case before the Board, the City sought to discharge Johnson for his misconduct in tipping off a friend that he was about to be arrested, and Johnson responded, in part, that he should not be discharged because the CBA entitled him to receive progressive and corrective discipline instead. Johnson did not prevail, and he was discharged by the Board for his misconduct. When the Union filed its grievance, it also argued that Johnson should not be discharged by the Board because he was entitled to receive progressive and corrective discipline based on the same operative facts. While the Union's grievance raises an additional claim regarding whether the Board has the authority to discharge Johnson and asserts that an arbitrator should resolve these claims, the Union's goal here is the same as Johnson's—*i.e.*, to reinstate Johnson on the police force. Therefore, it is disingenuous to suggest the causes of action are not identical.

All of the arguments the Union now raises could have been raised by Johnson or by the Union in the earlier proceeding. As stated above, the doctrine of *res judicata* bars a claim based on facts that would have constituted a counterclaim or defense in the earlier proceeding

where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action. *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92 (2001). Here, successful prosecution of the Union's grievance would have nullified the earlier judgment.

## Identity of Parties or Their Privies

The Union maintains that it was not in privity with Johnson. A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty. *Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 723 (2004). The term "privity" is not a precise one. *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916 (1997); accord *Purmal*, 354 Ill. App. 3d at 722 ("With respect to the doctrine of *res judicata*, there is no generally prevailing definition of 'privity' which can automatically be applied to all cases; that determination requires a careful examination into the circumstances of each case"). Certain authorities, including the Restatement (Second) of Judgments (1982), no longer use the term "privity." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992); *Diversified Financial*, 286 Ill. App. 3d at 916. Under Illinois law, "[p]rivity is said to exist between ' "parties who *adequately represent the same legal interests.*" ' [Citation.]" (Emphasis added.) *Burris*, 151 Ill. 2d at 296; accord *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 718 (2002).

The Union argues that a determination of the grievance claim would benefit all of its members and, therefore, there is no privity of interest. The Union argues that the general purpose of collective bargaining is to enable employees to pool their economic strength by joining together in a union to improve conditions of employment as a collective group. The Union cites *Stahulak v. City of Chicago*, 184 Ill. 2d 176 (1998), in support.

In *Stahulak*, the plaintiff was discharged for violating the collective bargaining agreement. The union filed a grievance on his behalf and on behalf of others, arguing that the City of Chicago should have followed certain procedures before it terminated the plaintiff. The grievance proceeded to an arbitrator, who sustained the grievance. However, the arbitrator reinstated the plaintiff only to probationary status pending a final decision of the Chicago fire department. The plaintiff was ultimately discharged. The plaintiff brought an action against the City of Chicago, the fire department, and the union, asking the court to vacate the arbitration award. The supreme court held that proceedings to vacate an arbitration award entered pursuant to a

collective-bargaining agreement must be brought by a party to the agreement. In *Stahulak*, the parties to the agreement were the city and the union, not the plaintiff. The court further held that individual employees represented by a union should be allowed to seek judicial review of an arbitration award only if they can show that the union breached its duty of fair representation. *Stahulak*, 184 Ill. 2d at 184.

We find *Stahulak* irrelevant. *Stahulak* involved a standing issue. Here, both Johnson and the Union had a right to sue. Furthermore, the benefit to the membership is ancillary and subordinate to the actual relief sought: the reinstatement of Johnson.

Although the Union's role is to improve conditions of employment for the collective group, in this case the Union's grievance is specifically based on claims that Johnson should not have been discharged. This is the classic context in which a union is the proper representative of an individual who is no longer actively employed. See *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW, & its Local 117 v. Acme Precision Products, Inc.*, 515 F. Supp. 537 (E.D. Mich. 1981). We note also that federal courts have recognized that individual members of a labor union or another unincorporated association can be bound by judgments in suits brought by the union or association in its representative capacity. See, *e.g.*, *Meza v. General Battery Corp.*, 908 F.2d 1262, 1268 (5th Cir. 1990).

The Union argues that privity does not exist because the City named the Union and Johnson as separate defendants. Merely because the City named the Union and Johnson as separate defendants in the present action has no bearing on whether the Union has an identity of interest with Johnson in the underlying case. True, Johnson was the only named defendant before the Board and on administrative review, but the fact remains that the Union has little separate beneficial interest in recovery here. It named Johnson in the grievance claim and asked for his reinstatement to the police force.

In addition, the Union and Johnson have identity of interest pursuant to statute. The Union is designated as its members' exclusive representative for the purposes of collective bargaining. 5 ILCS 315/6 (West 2002). As such, the Union statutorily represents the interests of its individual members with respect to rates of pay, wages, and other conditions of employment. *Mahoney v. City of Chicago*, 293 Ill. App. 3d 69, 72 (1997).

The Union and Johnson contractually also have identity of interest under the CBA. Article 2.1 provides in part, "The City recognizes the Union as the sole and exclusive collective bargaining agent for all sworn personnel of the Rockford Police Department from the rank of

patrol officer to and including the rank of sergeant. \*\*\* The City will negotiate only with the authorized representatives of agents of the Union in all matters relating to wages, hours, and conditions of employment."

The Union attempts to avoid the doctrine of *res judicata* by asserting that it could not intervene before the Board or file a motion to stay and bring a grievance claim because the terms of the CBA would not allow it. The Union points out that article 15.9(F) provides that the Board may suspend an officer only up to 30 days. The Union asserts that, when the Board issued its discharge order to Johnson, it violated the CBA by failing to suspend him. Thus, the Union asserts that it was not until the Board exceeded the 30-day suspension maximum that the Union filed a timely grievance. We find nothing in article 15.9(F) that prevents the Board from discharging a police officer or requires suspension. It merely provides that, when the Board deems that an officer's punishment warrants suspension, the suspension may be up to 30 days. Contrary to the Union's assertion, section 10—2.1—17 of the Code vests authority in the Board to hold disciplinary hearings and discharge police officers. 65 ILCS 5/10—2.1—17 (West 2002). We find that privity exists under the circumstances in this case.

Additionally, we fail to see why the Union waited until the Board issued its order to discharge Johnson before seeking arbitration. Both the Union and Johnson were aware from the time of the hearing that the City was seeking a discharge. The Union president and a Union representative were present throughout the hearing. As the City points out, Johnson and the Union, through its president, had placed the article 15.9(A) progressive discipline issue before the Board. As further observed by the City, if the Union felt so strongly that the Board had no authority to discharge Johnson, it could have sought an injunction to stay the Board from continuing the hearing. Instead, both Johnson and the Union allowed the Board's decision to become final before the Union instituted the grievance procedure.

■ In *Village of Creve Coeur v. Fletcher*, 187 Ill. App. 3d 116 (1989), the court pointed out the irrational result that would occur if a police officer were allowed to pursue both administrative review through the courts and arbitration:

"In this case, for instance, supposing that the parties proceeded pursuant to the fire and police commission act by going through the Board of Police and Fire Commissioners, the circuit court, the appellate court to the supreme court of Illinois, one of the parties, dissatisfied by the result of the supreme court, could then, according to the circuit court's interpretation, proceed through the

regular grievance procedure where a police officer's immediate sergeant could review and decide contrary to the decision of the supreme court." *Village of Creve Coeur*, 187 Ill. App. 3d at 118. Here, the Union, acting on behalf of Johnson in filing a grievance, is collaterally attacking the Board's and the trial court's decisions in an attempt to find a favorable outcome. As the court observed in *Peoria Firefighters*, "[t]here is a public policy component of *Creve Coeur* which applies to the instant case—conservation of judicial resources and time." *Peoria Firefighters*, 229 Ill. App. 3d at 1007. We agree with the trial court that, considering the tremendous expenditure of public resources and judicial time in litigating the claim that Johnson should not have been discharged, it is most appropriate that this court apply the rationale enunciated in *Creve Coeur* to the instant case. Because we affirm the trial court's judgment based on *res judicata*, we need not address the Union's remaining issues.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and GROMETER, JJ., concur.