2024 IL App (1st) 240613

FOURTH DIVISION
Order filed: December 19, 2024

No. 1-24-0613

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
|     Petitioner, | ) | Petition for Administrative |
| | ) | Review of an Order of the |
| v. | ) | Illinois Educational Labor |
| | ) | Relations Board |
| CHICAGO TEACHERS UNION, LOCAL NO. 1, IFT-<br>AFT, AFL-CIO, | ) | |
| | ) | No. 2022-CA-0018-C |
| | ) | |
|     Respondent. | ) | |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1    The Chicago Board of Education ("CBE" or "the Board of Education") petitions for administrative review of an order of the Illinois Educational Labor Relations Board ("IELRB" or "the Labor Board") determining that the Board of Education had committed an unfair labor practice by refusing to arbitrate grievances filed by the Chicago Teachers Union, Local No. 1, IFT-AFT, AFL, CIO ("the Union") on behalf of two teachers, Daphne Moore and Olayinka Mohorn-Mintah (together, "the Teachers"). Because we agree with the Board of Education that the

arbitration of the Union's grievances is barred by *res judicata*, we reverse the order of the Labor Board.

¶ 2    In April 2017, the Board of Education filed dismissal charges against Moore for allegedly failing to appropriately respond to a student having taken excessive medication. Following an evidentiary hearing, a hearing officer determined that the Board of Education had not proven its allegations and recommended that Moore not be dismissed. In an October 24, 2018, order, the Board of Education partially adopted and partially rejected the hearing officer's recommendations. It agreed to reinstate Moore, but it imposed a 90-day time-served suspension to be deducted from her back pay.

¶ 3    In November 2018, Moore filed a petition for administrative review of the Board of Education's order with this court, arguing that the dismissal procedures set forth in section 34-85 of the Illinois School Code ("School Code") (105 ILCS 5/34-85 (West 2018)) did not authorize the Board of Education to suspend her and reduce her pay.

¶ 4    While that administrative review was pending, on December 6, 2018, the Union filed a grievance on Moore's behalf asserting that Moore's suspension without pay was not authorized by its collective bargaining agreement ("CBA"). The Union specifically requested that the Board of Education rescind the 90-day suspension and make Moore whole. On January 29, 2019, the Union demanded arbitration of the grievance. On July 5, 2019, the parties agreed to select an arbitrator and to set a hearing date for some time after the resolution of Moore's administrative review. With input from the arbitrator, the parties initially selected a hearing date of March 20, 2020, before repeatedly postponing the hearing while waiting for a decision from this court and subsequently the supreme court. The hearing was finally set for May 18, 2021.

¶ 5      On December 23, 2019, this court ruled in Moore's favor. See *Board of Education of City of Chicago v. Moore*, 2019 IL App (1st) 182391 (*Moore I*). The Board of Education petitioned for review in the Supreme Court of Illinois, which allowed the appeal and ultimately reversed the judgment of this court. The supreme court held that the School Code authorized the Board of Education to both impose a suspension in lieu of dismissal and reduce Moore's back pay. See *Board of Education of City of Chicago v. Moore*, 2021 IL 125785, ¶ 61 (*Moore II*).

¶ 6      The history of Mohorn-Mintah's case is essentially the same. On December 6, 2019, the Board of Education filed dismissal charges against her, alleging that she had verbally abused students and staff. A hearing was held before a hearing officer, who recommended against dismissal. The Board of Education partially adopted and partially rejected the hearing officer's recommendations, reinstating Mohorn-Mintah but issuing a warning and reducing her back pay by 50%.

¶ 7      On September 18, 2018, Mohorn-Mintah petitioned for administrative review of the Board of Education's decision in this court, arguing that the Board of Education exceeded its authority under section 34-85 of the School Code by imposing a sanction other than dismissal and by not awarding her full back pay.

¶ 8      On March 28, 2019, the Union filed a grievance on Mohorn-Mintah's behalf alleging that the Board of Education's reduction of Mohorn-Mintah's back pay was effectively a suspension without pay, which the Union asserted was not authorized by the CBA. The Union requested that the Board of Education issue Mohorn-Mintah full back pay and otherwise make her whole. On April 2, 2020, the Union demanded arbitration. On November 18, 2020, the parties mutually requested that Mohorn-Mintah's arbitration be consolidated with Moore's.

¶ 9    On November 24, 2020, prior to the supreme court's ruling in *Moore II*, this court ruled in favor of the Board of Education in Mohorn-Mintah's administrative review. See *Mohorn-Mintah v. Board of Education of City of Chicago*, 2019 IL App (1st) 182011. The panel deciding that case declined to follow the decision of the panel in *Moore I* and instead ruled that the Board of Education had acted within its statutory authority in imposing non-dismissal sanctions. *Id.* ¶¶ 26-28. The supreme court denied Mohorn-Mintah's petition for leave to appeal.

¶ 10    On March 30, 2021, the Board of Education informed the Union that, in light of the decision in *Moore II*, it no longer agreed to arbitration of the Teachers' grievances. The Board of Education explained in an email that the Illinois Educational Labor Relations Act ("IELRA") (115 ILCS 5/1 *et seq.* (West 2020)) prohibited the implementation of a provision of a collective bargaining agreement if doing so would be in violation of or inconsistent with Illinois law and that, because the supreme court held in *Moore II* that the imposition of back-pay reductions is within its statutory authority under the School Code, it believed that arbitration of the grievances at issue would violate the School Code and, therefore, the IELRA.

¶ 11    The arbitrator held a video conference with the parties, after which he issued a written order on April 14, 2021, referring the dispute over the arbitrability of the grievances to the Labor Board. In the order, the arbitrator recounted that the Board of Education had taken the position that, while it had agreed to schedule arbitration of the grievances, the supreme court's decision in *Moore II* had materially changed the circumstances. The arbitrator further noted that the Union had argued that *Moore II* only settled whether the Board of Education was statutorily authorized to impose back-pay reductions and that the Board of Education's power to impose such sanctions under the CBA remained an open question. The arbitrator stated that he would not infer a waiver of the Board

of Education's arbitrability objection from its agreement to schedule a hearing, as the supreme court's decision in *Moore II* was the basis for the objection and it was not handed down until after the arbitration hearing had been scheduled. The arbitrator also observed that it was not his role to determine the merits of the Board of Education's substantive arbitrability objection. Rather, that question was properly for the Labor Board to decide. Accordingly, the arbitrator postponed the scheduled hearing and referred the matter to the Labor Board.

¶ 12    On September 22, 2021, the Union filed an unfair labor practice charge against the Board of Education with the Labor Board alleging that the Board of Education had violated the IELRA by refusing to arbitrate the Teachers' grievances. Through the charge, the Union sought to compel the Board of Education to participate in the arbitration of those grievances. After investigating the charge, the executive director of the Labor Board issued a complaint for hearing. The parties waived an evidentiary hearing and agreed for the matter to be decided on a stipulated record. They then filed post-hearing briefs presenting their arguments.

¶ 13    The Board of Education asserted that the questions raised in the grievances had already been decided in *Moore II* and were, therefore, barred by the doctrine of *res judicata*, that by not raising it earlier the Union had waived its argument that the back-pay reductions were barred by the CBA, and that the grievances are not arbitrable because their subject matter conflicts with the School Code, as decided in *Moore II*. The Union responded that arbitration has historically been the appropriate forum for grievances regarding teacher suspensions, that the Board of Education has raised only procedural defenses, which are for the arbitrator to decide, that the Board of Education had waived any objection to arbitration by scheduling an arbitration hearing, and that *res judicata* does not bar its grievances.

¶ 14 On June 13, 2023, an administrative law judge ("ALJ") issued a recommended decision and order. The ALJ determined that the grievances were not barred by *res judicata* because the Teachers' administrative reviews concerned the Board of Education's statutory authority to suspend the Teachers, while the grievances concern the Board of Education's authority to do so under the CBA, and because the parties in the two proceedings were different. The ALJ also found that the Teachers had not waived their right to contest their suspensions under the CBA because the Union had timely filed the grievances on their behalf and because it was the Union's responsibility to pursue grievances to enforce the CBA and the Teachers' statutory challenge could not waive the Union's obligation in that regard. Lastly, the ALJ found that the grievances did not conflict with Illinois law because the Board of Education's statutory right to impose a suspension in lieu of dismissal was separate and distinct from its contractual right to do so under the CBA. Accordingly, the ALJ concluded that the Board of Education had violated the IELRA in refusing to arbitrate, and he recommended that, among other things, the Board of Education be compelled to arbitrate the grievances.

¶ 15 Following the ALJ's recommended decision, the Board of Education filed objections, and the Union filed a response. The Labor Board then issued an order in which two board members voted to affirm the ALJ's recommended decision and two voted to reverse. Each pair of Labor Board members explained their respective views on the issues in the case, but they noted that, because of the tie vote, the ALJ's recommended decision compelling arbitration would become the Labor Board's nonprecedential final order and would be binding on the parties. This petition for administrative review of that order follows.

¶ 16     The Board of Education raises three issues in this review, contending (1) that the Union's grievances are barred by the doctrine of *res judicata*, (2) that the subject matter of the dispute conflicts with the School Code and, therefore, violates the IELRA, and (3) that the Teachers waived their right to arbitrate through the Union by pursuing their court cases challenging their suspensions as violations of the School Code. We agree with the Board of Education's argument that the grievances are barred by *res judicata*, and that determination moots the remaining two issues.

¶ 17     Before we address the merits of the Board of Education's petition, we must address several preliminary issues. First, it is important to clarify that, although both parties repeatedly reference and discuss the reasoning and opinions expressed by the Labor Board members in explaining their votes to affirm or reverse the ALJ's recommended order, it is not their conclusions that we are reviewing. Rather, because the four-member Labor Board was evenly split, with two members voting to affirm the ALJ's recommendation and two voting to reverse, the ALJ's recommended decision and order is, effectively, the final order of the Labor Board and is the order on review. See *Board of Education of Community Consolidated High School District No. 230, Cook County v. Illinois Educational Labor Relations Board*, 165 Ill. App. 3d 41, 55 (1987) (stressing that, in the wake of a tied IELRB vote, the decision of the hearing officer stood as "the final IELRB order akin to any other final determination of that agency" and that "it is only the decision of the hearing officer which is subject to administrative review before this court"); see also *Support Council of District 39, Wilmette Local 1274, IFT-AFT, AFL-CIO v. Educational Labor Relations Board*, 366 Ill. App. 3d 830, 833 (2006) (noting that, in the event of a tie vote, the recommended decision

becomes the IELRB's final order). Accordingly, the opinions of the Labor Board members are not relevant to our review, and we will examine only the ALJ's findings and conclusions.

¶ 18    Second, the parties disagree over the applicable standard of review. The IELRA provides that a final order of the Labor Board is subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2024)), which is taken directly to the appellate court. 115 ILCS 5/14(a)(1) (West 2024). "Under the Administrative Review Law, the scope of judicial review extends to all questions of law and fact presented by the record before the court." *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14 (citing 735 ILCS 5/3-110 (West 2010)). "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends on whether the issue presented is a question of law, fact, or a mixed question of law and fact." *Id.* (citing *AFM Messenger Service, Inc. v. Department of Employment Security,* 198 Ill. 2d 380, 390 (2001)). "An agency's conclusion on a question of law is reviewed *de novo*," and "[a] reviewing court is not bound by an agency's interpretation of a statute." *Id.* ¶ 15 (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board,* 228 Ill. 2d 200, 210-11 (2008)). "However, the agency's interpretation remains relevant where there is a reasonable debate about the meaning of the statute." *Id.* (citing *Harrisonville Telephone Co. v. Illinois Commerce Commission,* 212 Ill. 2d 237, 247 (2004)). An agency's findings of fact are held to be *prima facie* true and correct. *Id.* (citing 735 ILCS 5/3-110 (West 2010)). "A mixed question of law and fact asks the legal effect of a given set of facts. In resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules." *Id.* ¶ 16. We apply the "clearly erroneous" standard to an agency's conclusion on a mixed question of law and fact. *Id.* "A decision is 'clearly erroneous'

when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *AFM Messenger,* 198 Ill. 2d at 391-95).

¶ 19    The Board of Education contends that all of the issues in this case are pure legal questions that should be reviewed *de novo*, while the Union argues that the issues each present mixed questions of law and fact that are reviewed under the deferential "clearly erroneous" standard. Each side is correct in part. We agree with the Board of Education that *de novo* review applies to its first issue examining whether arbitration of the Union's grievances is barred by the doctrine of *res judicata*. See *Lelis v. Board of Trustees of Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 13 ("[T]he question of whether the doctrines of *res judicata* and collateral estoppel bar claims are questions of law, subject to *de novo* review." (citing *Dowrick v. Village of Downers Grove,* 362 Ill. App. 3d 512, 515 (2005), and *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance,* 372 Ill. App. 3d 24, 31 (2007))). However, we agree with the Union that the Board of Education's second issue, which involves the interpretation of the School Code and a determination of arbitrability, and third issue, which addresses waiver and asks, "the legal effect of a given set of facts," would be reviewed for clear error, if we were to reach them. See *Board of Education of City of Chicago*, 2015 IL 118043, ¶ 18 (applying the "clearly erroneous" standard to a review of the IELRB's application of the School Code in determining the arbitrability of a grievance because it implicated the IELRB's "experience in construing and applying the statute that it administers" and asked the legal effect of a given set of facts); *State, Department of Central Management Services (Department of Corrections) v. State, Labor Relations Board, State Panel*, 373 Ill. App. 3d 242, 249-50 (2007) (applying the "clearly erroneous" standard to the issue

of waiver because that issue "turns on an application of the relevant law to the particular facts of the case" and presents a mixed question of law and fact).

¶ 20    Third, the Union asserts that, by agreeing to select an arbitrator and scheduling an arbitration hearing, the Board of Education has effectively waived any right to oppose arbitration on *res judicata* grounds. For support, the Union relies on *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 662 (1988), in which the appellate court held that, by acquiescing to the plaintiff's maintenance of two separate suits at the same time, a defendant waived any objection to the plaintiff's claim splitting, a rule that is "closely related to the doctrine of *res judicata*." However, we find the present case distinguishable. In *Thorleif Larson & Son*, the defendant had answered the complaint, raised affirmative defenses, and initiated pretrial discovery without objecting to the cases proceeding simultaneously, whereas the Board of Education in this case merely agreed to select an arbitrator and an arbitration date, and, importantly, did so with the stated and mutual understanding of the Union that the arbitration should not continue to a hearing until the Teachers' administrative reviews were complete because the outcome of those reviews could affect the grievances. Unlike the defendant in *Thorleif Larson & Son*, the Board of Education did not agree to simultaneous proceedings and did not act inconsistently with its present position. Therefore, it did not waive its *res judicata* argument.

¶ 21    Turning to the merits of the case, the Board of Education argues that it is entitled to refuse to arbitrate the Union's grievances because arbitration is barred by the doctrine of *res judicata*. Specifically, the Board of Education contends that the prior administrative reviews constituted final judgments on the merits, that the parties in the two proceedings are in privity, and that the grievances arise out of the same transaction as the prior reviews, thereby satisfying the

requirements of *res judicata*. The Union responds that *res judicata* does not bar its grievances because the parties and the causes of action are different and arbitration is the only permissible forum for litigation of alleged CBA violations. We agree with the Board of Education's view of the issue.

¶ 22    "A school district's refusal to comply with a binding arbitration agreement is a violation of section 14(a)(1) of the [IELRA]," which prohibits " '[e]ducational employers, their agents or representatives' " from " '[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act.' " *Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board*, 2012 IL App (1st) 101716, ¶ 19 (quoting 115 ILCS 5/14(a)(1) (West 2006)). For this reason, a school district may only refuse to arbitrate a grievance if: "(1) there is no contractual agreement to arbitrate the substance of the dispute; or (2) the dispute is not arbitrable under section 10(b) of the Act (115 ILCS 5/10(b) (West 2006)) because the subject matter of the dispute conflicts with Illinois law." *Id.* Nonetheless, the Board of Education contends that it can also refuse to arbitrate the Union's grievances on the grounds that they are barred by the equitable doctrine of *res judicata*. Our caselaw supports the Board of Education's position that *res judicata* can act to bar the arbitration of grievances. See *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 48 ("[T]he right to pursue an arbitration action may be limited by the effect of the *res judicata* doctrine. *** [I]f the arbitration action involves issues previously reached; arbitration is barred notwithstanding the parties' contractual rights to bring such actions." (citing *Peregrine Financial Group, Inc. v. Ambuehl*, 309 Ill. App. 3d 101, 107 (1999))). Given that "few rules are more essential or more firmly embedded in our jurisprudence than that of *res judicata*" (*id.* ¶ 49), we do not see a compelling reason to forbid its application in this case.

¶ 23    Under the doctrine of *res judicata*, "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *Id.* (citing *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998)). "The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that action." *Id.* (citing *River Park, Inc.*, 184 Ill. 2d at 302). In order for the doctrine of *res judicata* to apply, there must be "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies." *Id.* ¶ 50 (citing *River Park, Inc.*, 184 Ill. 2d at 302). The parties in this case agree that the first element of this test is satisfied. Our focus, therefore, is on the remaining two elements.

¶ 24    We will first address the identity of the parties. "A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty." *City of Rockford v. Unit Six of Policemen's Benevolent & Protective Association of Illinois*, 362 Ill. App. 3d 556, 563 (2005). A determination of whether privity exists for *res judicata* purposes depends on the facts of each case (*id.*) and focuses on whether the parties " 'adequately represent the same legal interests' " (*People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992) ("It is the identity of interest that controls in determining privity, not the nominal identity of the parties")).

¶ 25    The ALJ found that there was no identity of the parties in this case for the simple reason that "the Union was not a party to the [prior] litigation." This analysis was clearly inadequate because it did not look beyond the nominal identity of the parties. In this review, the Union puts forth essentially the same position, that there is no identity of the parties because the grievances were filed on behalf of, but not by, the teachers. Like the ALJ, the Union does not engage in any

analysis of the parties' interests and does not look beyond their names. The Board of Education, on the other hand, argues that the parties are in privity based on the close alignment of their interests, and we agree.

¶ 26    One case in particular supports a conclusion that privity between the Teachers and the Union exists in the present case. In *City of Rockford*, a police officer, Steven Johnson, was terminated and unsuccessfully challenged his termination in the circuit court. 362 Ill. App. 3d at 558-59. Johnson's union filed a grievance on his behalf alleging a violation of its collective bargaining agreement and sought arbitration. *Id.* at 557. The City of Rockford filed a declaratory action seeking to avoid arbitration on *res judicata* grounds, among others, and the circuit court ruled in the city's favor. *Id.* at 559-60. On appeal, this court found that there was privity between the Union and Johnson because they shared a common interest, which was Johnson's reinstatement. *Id.* at 564. In doing so, we rejected the Union's argument that its interest was broader than just Johnson's reinstatement and instead extended to obtaining a benefit for all of its members. Rather, we observed that, "[a]lthough the Union's role is to improve conditions of employment for the collective group, in this case the Union's grievance is specifically based on claims that Johnson should not have been discharged. This is the classic context in which a union is the proper representative of an individual who is no longer actively employed." *Id.* We also noted that it was not significant that Johnson was the only named defendant in the prior action because "the fact remains that the Union has little separate beneficial interest in recovery here. It named Johnson in the grievance claim and asked for his reinstatement to the police force." *Id.*

¶ 27    The present case is no different. While the Union was not a named party in the prior proceedings, its grievances were filed on the Teachers' behalf and seek the same relief that the

Teachers sought when they contested their dismissals individually, which was for the suspensions to be rescinded and for the Teachers to be made whole. Regardless of whether a favorable ruling might benefit the Union's broader membership by establishing a beneficial precedent, the fact of the matter is that the Union's grievances ultimately seek the same relief as the prior administrative reviews and were filed with the same interest in mind. Accordingly, we agree with the Board of Education that the Union's interest in the grievance proceedings is so closely aligned to the Teachers' interests in the prior administrative reviews that privity between the parties exists for *res judicata* purposes.

¶ 28    Out next task is to determine whether there is an identity of cause of action. To do so, we apply a transactional test, under which "the assertion of different theories or kinds of relief still constitute a single cause of action if a single group of operative facts give rise to the assertion of relief." *Lopez*, 2017 IL 120643, ¶ 50 (citing *River Park, Inc.*, 184 Ill. 2d at 311). The ALJ in this case found that the issues in the Union's grievances were not the same as those in the Teachers' prior administrative reviews because the prior actions, which considered "whether the [Board of Education] had the authority under Section 34-18 of the Illinois School Code to suspend Moore and Mohorn-Mintah in lieu of termination, had no bearing on the issue presented by the grievances, that is, whether, pursuant to the parties' CBA, the [Board of Education] retained the authority to suspend Moore and Mohorn-Mintah." The Board of Education asserts that this conclusion was erroneous because, although the legal theories may be different, the claims in the two proceedings arise out of the same transaction. The Union responds that the actions are not the same because the Teachers' actions were statutory, while the grievances are contractual, and because the contractual

claims at issue in the grievances could not have been raised in the prior administrative reviews. We again agree with the Board of Education.

¶ 29    The basis for the ALJ's conclusion that there is no identity of cause of action seems to have been that the grievances are based on a legal theory that is distinct from the one that the Teachers put forth in their administrative reviews. However, as our supreme court has explained, under the transactional approach, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v*, 184 Ill. 2d at 311. This is because, as the name suggests, the transactional approach is concerned with foreclosing subsequent claims arising out of the same *transaction*, even if the claims are substantively different. See *id.* at 309 ("Under [the transactional] approach, a claim is viewed in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights." (citing Restatement (Second) of Judgments § 24, Comment *a,* at 197 (1982))).

¶ 30    It seems quite clear that the same transaction forms the basis of both proceedings at issue. That is, both the present grievances and the prior administrative reviews concern the Board of Education's decisions to suspend the Teachers in lieu of dismissal. The only difference between the cases is that the Teachers' objections in the earlier proceedings were grounded in statute, and the Union's claims in the present proceeding are based on contract. The assertion of different legal theories does not change the fact that the proceedings stem from the same transaction.

¶ 31    The Union attempts to differentiate the grievances and the administrative reviews by asserting that the grievances are "not a challenge to the merits of the Teachers' particular suspension" and instead challenge the Board of Education's general authority under the CBA to issue suspensions in lieu of dismissal. However, that the Union may be challenging the Board of Education's suspension power in the course of contesting the Teachers' suspensions does not negate the fact that the grievances specifically and solely relate to reversing the Teachers' respective suspensions. Indeed, the specific relief requested in the grievances is for Moore's suspension to be rescinded, for Mohorn-Mintah to be awarded full back pay, and for both teachers to otherwise be made whole. As with the prior administrative reviews, the focus in the grievances is on overturning the suspensions, with the only difference being the forum and the legal theory. In other words, the Union is expressly prosecuting the grievances on the Teachers' behalf and is seeking relief solely for the Teachers. The Union is not seeking relief for its broader membership, beyond the potential establishment of a favorable precedent, which, as discussed earlier, is "ancillary and subordinate to the actual relief sought" (*City of Rockford*, 362 Ill. App. 3d at 564), in this case the reinstatement of the Teachers.

¶ 32    We observe several cases to be supportive of our conclusion that an identity of cause of action exists in this case. In *Peoria Firefighters Local 544, International Association of Fire Fighters, AFL-CIO v. Korn*, 229 Ill. App. 3d 1002, 1004 (1992), two firefighters were dismissed by the City of Peoria following a hearing before the Fire and Police Commission, and they then sought administrative review in this court. *Id.* While that review was pending, the firefighters filed a grievance through their union alleging violations of their collective bargaining agreement. *Id.* The parties initially selected an arbitrator, before deciding to postpone arbitration pending the

resolution of the administrative review. *Id.* After the administrative review concluded with the dismissals being affirmed, the city refused to continue with arbitration, asserting, among other things, that the firefighters' claims were barred by *res judicata*. *Id.* The union then filed a petition to compel arbitration in the circuit court, which granted the city's subsequent motion to dismiss. *Id.* at 1005. On appeal, this court concluded that, although the union's grievance raised a different argument than that which was put forth in the previous administrative review, arbitration of the grievances was barred by *res judicata* because the underlying facts and the relief sought in the two proceedings were identical. *Id.*

¶ 33    In *City of Rockford*, which we discussed earlier, this court found it insignificant that the union brought a different claim in the grievance filed on its member's behalf. 362 Ill. App. 3d at 562. Instead, we focused on the fact that the claims were based on "the same operative facts" and explained that "[w]hile the Union's grievance raises an additional claim regarding whether the Board has the authority to discharge Johnson and asserts that an arbitrator should resolve these claims, the Union's goal here is the same as Johnson's—*i.e.,* to reinstate Johnson on the police force. Therefore, it is disingenuous to suggest the causes of action are not identical." *Id.* at 562.

¶ 34    Lastly, in *Lopez*, a police officer's union filed a grievance on his behalf after he was terminated following a board hearing. 2017 IL 120643, ¶¶ 13, 15. In examining whether arbitration of the union's grievance was barred by *res judicata*, our supreme court held that, because the grievance arose from the same operative facts and had the same objective as the prior proceeding, it was insignificant for *res judicata* purposes that the union had raised a different legal argument than the police officer had raised when initially contesting his dismissal before the board. *Id.* ¶ 75.

¶ 35    These cases demonstrate that the Union's assertion of a different legal theory does not make the causes of action different for *res judicata* purposes. Rather, because the grievances arise out of the same transaction and the same operative facts and have the same objective as the Teachers' prior administrative reviews, the causes of action are considered identical.

¶ 36    The Union makes an additional argument that arbitration is the only available forum for its grievances and that the CBA-related issues could not have been raised in the prior administrative reviews. However, the Union does not cite any provision in the CBA providing that alleged violations of the CBA can only be raised in a grievance. While the CBA certainly allows for binding arbitration of grievances asserting alleged violations of the agreement, as the IELRA requires it to do (see 115 ILCS 5/10(c) (West 2024)), the Union has not cited, and we do not see, any provision in the CBA making a grievance the exclusive means of raising a violation of the CBA or forbidding an employee from presenting such a claim in any other manner. Indeed, an alleged violation of the CBA is in essence a contract claim, and both parties to the prior administrative reviews, the Board of Education and the Teachers, by way of their membership in the Union, were parties to the CBA. Accordingly, we see no reason why the Teachers could not have argued a CBA violation in those prior proceedings.

¶ 37    As a final point, the Union also argues that *res judicata* should not bar arbitration of the grievances in this case because such a result would be fundamentally unfair. For support, the Union relies on the case of *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 392 (2001), in which our supreme court held that it would be fundamentally unfair to bar a plaintiff's state law claim that had been dismissed from an earlier federal court case on grounds of lack of jurisdiction. In that decision, *res judicata* did not apply because, "[a]lthough the claims in question may be initially

regarded as a single cause of action for application of *res judicata,* subsequent events may alter their status" and the federal court's dismissal of the claim for lack of jurisdiction "in effect reserved plaintiff's right to pursue the matter in state court." *Id.* at 393. The court explained that such a result was consistent with the principles of *res judicata* and judicial economy because the plaintiff had in fact raised his state law claim at the first opportunity in federal court and had not received a judgment on the merits. *Id.* In other words, the plaintiff had done what he was supposed to do and had raised all claims arising out of the same transaction in the same proceeding, only to have one claim dismissed for lack of jurisdiction. In such a case, it would be unfair to deny him a day in court on a claim that had been dismissed on jurisdictional grounds.

¶ 38    We do not agree with the Union that *Nowak* is applicable to the present case. As discussed above, although it asserts that the Teachers' CBA claims could not have been raised in their prior administrative reviews, the Union has not substantiated that argument with any support from the IELRA, the School Code, or the CBA itself. Instead, we see no reason why the Teachers could not have raised the CBA arguments earlier. Application of *res judicata* in the present case is not fundamentally unfair.

¶ 39    Accordingly, we conclude that all three requirements for the application of *res judicata* have been satisfied and that arbitration of the Union's grievances on behalf of the Teachers is barred on that basis. The Labor Board's order compelling the Board of Education to arbitrate the grievances is reversed and the matter is remanded to the Labor Board for the Union's unfair labor practice charge to be dismissed.

¶ 40    Reversed and remanded with instructions.

No. 1-24-0613

---

**Chicago Board of Education v. Chicago Teachers Union,
Local No. 1, IFT-AFT, AFL- CIO, 2024 IL App (1st) 240613**

---

Appeal from Petition for Administrative Review of an Order of the Illinois
Educational Labor Relations Board, No. 2022-CA-0018-C

---

Appellant:     William R. Pokorny Sally J. Scott Hailey M. Golds
               FRANCZEK P.C.
               300 South Wacker Drive, Suite 3400
               Chicago, Illinois 60606
               Phone: (312) 986-030


Appellees:     Robert E. Bloch Josiah A. Groff
               DOWD, BLOCH, BENNETT, CERVONE, AUERBACH & YOKICH
               8 South Michigan Avenue, 19th Floor
               Chicago, Illinois 60603
               Phone: (312) 372-1361