2025 IL App (1st) 240317
No. 1-24-0317

FIRST DIVISION
August 4, 2025

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SHEARIE HARDING, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2023 M1-118353 |
| | ) | |
| MEIFANG SHI and RICHLAND GLOBAL, INC., | ) | |
| | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | Stephen A. Swedlow, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Cobbs and Lavin concurred in the judgment and opinion.


**OPINION**

¶ 1    Plaintiff, who formerly leased an apartment from defendant Meifang Shi, appeals from the circuit court's dismissal of her action, in which she alleged violations of the Chicago Residential Landlord and Tenant Ordinance (RLTO) pertaining to security deposits. The trial court dismissed the action after defendants provided proof that plaintiff's former roommate paid the entirety of the security deposit for the lease in question. For the following reasons, we affirm.

¶ 2                                          BACKGROUND

¶ 3    In May 2023, plaintiff and Kenneth Turner (who is not a party to this action) together executed a lease with defendant Shi (hereinafter landlord) to rent an apartment located at 3527 South Parnell Avenue in Chicago. The lease identified both plaintiff and Turner as tenants, and it indicated that three children would also reside with them. Both plaintiff and Turner signed the lease.

¶ 4    The lease specified a one-year term beginning on July 1, 2023, with monthly rent of $3100. The lease also called for a payment of a security deposit of $5000, which was to be held by defendant Richland Global, Inc. (Richland) on the landlord's behalf.

¶ 5    It is undisputed that Turner paid the entire $5000 security deposit to Richland. The record reflects that plaintiff and Turner moved into the premises in early July 2023.

¶ 6            Plaintiff Vacates the Premises and Demands Payment From the Landlord

¶ 7    On July 24, 2023, plaintiff's counsel sent a letter to the landlord advising that plaintiff had been the victim of domestic violence by a household member and, thus, "your lease with [plaintiff] is terminated." Plaintiff's counsel indicated that she had left the apartment, but that Turner continued to reside at the premises and remained obligated to pay rent.

¶ 8    In the same letter, plaintiff's counsel demanded return of the $5,000 security deposit plus additional penalties and fees totaling $16,500. Plaintiff's counsel alleged that the landlord had failed to disclose information about the bank holding the security deposit or to provide a receipt, in violation of RLTO section 5-12-080. Chicago Municipal Code § 5-12-080 (amended July 28, 2010). Plaintiff's counsel stated: "The penalty under the law is two times the deposit amount plus attorney fees and immediate return of the deposit. Therefore, demand is now made for this security deposit violation of $10,000.00 plus return of deposit of $5000.00 for a total of $15,000.00."

Plaintiff's counsel stated that he had incurred $1,500 in fees and thus "the total demand is $16,500."

¶ 9                    Landlord Releases Plaintiff From the Lease but Denies Any Further Obligation

¶ 10          On August 4, 2023, the landlord responded by letter from its counsel to plaintiff's counsel. The landlord stated it had no objection to termination of the lease with respect to plaintiff, and the landlord "agree[d] to release [plaintiff] from any further obligation or liability pursuant to the lease." However, the landlord stated it would not terminate the lease with respect to Turner.

¶ 11          Regarding the security deposit, landlord's counsel stated that it had been paid by Turner. Attached to the letter was a receipt from Richland indicating the $5000 deposit had been paid from a checking account in Turner's name. Because Turner paid the security deposit and continued to reside at the apartment, landlord's counsel denied that plaintiff was entitled to return of the security deposit or any other payments.

¶ 12                              Plaintiff Commences This Action

¶ 13          On August 21, 2023, plaintiff filed a complaint against the landlord and Richland, alleging violations of section 5-12-080 of the RLTO. Although her complaint attached a copy of the lease, its allegations made no mention of Turner. Plaintiff alleged that "Pursuant to the terms of the Lease, Plaintiff paid to Defendant $5,000 for a security deposit."

¶ 14          Plaintiff alleged that in violation of section 5-12-080 of the RLTO, the landlord "never disclosed the address of the financial institution" where the $5,000 security deposit was held and "never provided Plaintiff with a proper security deposit receipt." Plaintiff alleged that she terminated the lease on July 24, 2023, but that defendants failed to return the security deposit despite her demand.

¶ 15    The complaint cited section 5-12-080(f)(1) of the RLTO, by which if a landlord fails to comply with section subsections 5-12-080(a) through (e), "the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with RLTO section 5-12-081." Chicago Municipal Code § 5-12-080(f)(1) (amended July 28, 2010).

¶ 16    Plaintiff's complaint sought the $5,000 security deposit, plus "the statutory penalty of two times the $5000 security deposit, or $10,000." Thus, plaintiff sought a total judgment of $15,000, "plus attorney's fees, interest, and costs."

¶ 17                    Defendants' Motion to Dismiss

¶ 18    In January 2024, the landlord and Richland (represented by the same counsel), moved to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2022)), claiming that affirmative matter warranted dismissal of plaintiff's claims. Defendants attached to that motion the August 4, 2023, letter to plaintiff's counsel, which in turn attached the receipt of Turner's payment of the security deposit. Defendants primarily argued that plaintiff was not entitled to return of the security deposit because Turner, not plaintiff, was the person who made the payment.

¶ 19    Separately, defendants asserted that plaintiff's suit could not proceed because Turner was still in possession of the premises and remained subject to the lease. Because the premises were still occupied, they contended "none of the tenants are entitled to the return of any portion of the security deposit until possession is tendered back to the landlord." Defendants also asserted that plaintiff was not entitled to any damages "given that she never made any payment" of the security deposit. Defendants' motion also noted that Richland is not the landlord or owner of the leased premises.

¶ 20          On January 19, 2024, plaintiff filed a response in which she acknowledged that Turner paid the security deposit but maintained she still had a right to seek its return and damages for twice the amount of the deposit under section 5-12-080(f). She argued that although she did not pay the deposit, she had the rights of any tenant under the RLTO, as the RLTO "does not limit a tenant's rights to only the ones paying the rent or paying the security deposit." She noted that the lease identified her as a tenant under the lease and that it specified that all persons executing the lease "shall be jointly and severally liable for the performance of each and every agreement" thereunder. She noted the lease "did not state that only the person who paid the deposit has the statutory or contractual rights" to it.

¶ 21          Plaintiff also argued that she retained an interest in the security deposit because she and Turner held "the possessory rights [to the premises] and security deposit as tenants in common." She averred that "either the plaintiff or [Turner] has the same individual rights to the subject matter premises and the security deposit" and that it was "irrelevant" that the security deposit was paid from Turner's bank account.

¶ 22          Elsewhere, plaintiff's response claimed that although "defendant seem[ed] to be arguing" that Turner was a necessary plaintiff to the action, she could proceed without him. Plaintiff cited section 2-404 of the Code of Civil Procedure (Code) to argue that Turner was not a necessary party to the action, insofar as it provides that "[a]ll persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction *** is alleged to exist." 735 ILCS 5/2-404 (West 2022). Plaintiff argued that her "claim for statutory damages [under the RLTO] does not require the former roommate's" participation. Plaintiff otherwise maintained that defendants clearly violated 5-12-080 of the RLTO by failing to provide a proper receipt and necessary information regarding the bank account where the security deposit was held.

¶ 23                              Hearing and Dismissal of the Case

¶ 24        The record reflects that on January 30, 2024, the trial court briefly heard argument before granting defendants' motion to dismiss. Although a verbatim transcript is not in the record, plaintiff's counsel supplemented the appellate record with a stipulated bystander's report pursuant to Illinois Supreme Court Rule 323 (eff. July 1, 2017). Defendants-appellees did not object to that supplement and do not dispute its contents.

¶ 25        The bystander's report reflects that defense counsel argued for dismissal because "the roommate is still living there and paying rent and has not moved out. He is not in the case, my clients did nothing wrong, they gave a receipt." The court indicated to plaintiff's counsel that it believed defense counsel was correct because Turner remained in the premises.

¶ 26        Plaintiff's counsel argued that "under the intervention statute, [Turner] does not have to be involved in the case" in order for plaintiff to maintain the action. Plaintiff's counsel also maintained the receipt referenced by defense counsel violated the RLTO because "there is no listing of the bank name" where the deposit was held.

¶ 27        Defense counsel responded that plaintiff did not have a right to the security deposit because "the roommate is still there and did not move out." In dismissing the case, the trial court commented that plaintiff "can file it again when everyone is out."

¶ 28        On January 30, 2024, the court entered a corresponding written order dismissing plaintiff's action pursuant to section 2-619 of the Code. That order referenced the hearing but did not otherwise specify the reasons for dismissal. Plaintiff filed a timely notice of appeal.

¶ 29                                          ANALYSIS

¶ 30        On appeal, plaintiff argues the court erred in interpreting section 5-12-080 of the RLTO in the course of granting defendants' motion to dismiss. Chicago Municipal Code § 5-12-080

(amended July 28, 2010). She does not dispute that (1) Turner paid the entire $5000 security deposit or that (2) Turner remained in the premises at the time she filed her lawsuit. Nevertheless, she maintains these facts did not preclude her ability to recover the damages under section 5-12-080, based on the landlord's alleged violations of that section for failure to disclose a proper receipt for the security deposit and bank information about where the security deposit was held. She maintains that because she was a "tenant" under the terms of the lease and under the RLTO's definition of that term, she may seek damages under section 5-12-080 regardless of whether she paid the deposit or whether Turner is a party to this action.

¶ 31        For the following reasons, we affirm dismissal of plaintiff's suit.

¶ 32                              Standard of Review

¶ 33        The trial court dismissed the action pursuant to section 2-619 of the Code. 735 ILCS 5/2-619 (West 2022). A motion to dismiss pursuant to section 2-619 "admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." (Internal quotation marks omitted.) *Jackson v. Hehner*, 2021 IL App (1st) 192411, ¶ 25. "Dismissal is permitted based on certain listed 'defects' (735 ILCS 5/2-619(a)(1)-(8) (West 2020)) or some 'other affirmative matter' (735 ILCS 5/2-619(a)(9) (West 2020)) outside the complaint." *Id.*

¶ 34        Our standard of review upon a section 2-619 dismiss is *de novo*, meaning we perform the same analysis a trial court would perform. *Id.* ¶ 26. We must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party, which is plaintiff. *Id.* ¶ 27. We also "accept as true all well-pled facts in the plaintiff's complaint and any reasonable inferences that arise from those facts." (Internal quotation marks omitted.) *Id.*

¶ 35 Importantly, however, "we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct." *Id.* (citing *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25).

¶ 36                     Relevant Provisions of Section 5-12-080 of the RLTO

¶ 37 Plaintiff's complaint is premised on section 5-12-080 of the RLTO, which sets forth various requirements regarding the use of security deposits and provides for damages for its violation. Chicago Municipal Code § 5-12-080 (amended July 28, 2010).

¶ 38 Under section 5-12-080(a)(1),

> "A landlord shall hold all security deposits received by him in a federally insured interest-bearing account in a bank *** or other financial institution located in the State of Illinois. A security deposit and interest due thereon *shall continue to be the property of the tenant making such deposit*, shall not be commingled with the assets of the landlord, and shall not be subject to the claims of any credit of the landlord ***." (Emphasis added.) *Id.* § 5-12-080(a)(1).

¶ 39 "The name and address of the financial institution where the security deposit will be deposited shall be clearly and conspicuously disclosed in the written rental agreement signed by the tenant." *Id.* § 5-12-080(a)(3).

¶ 40 Under subsection (b),

> "any landlord who receives a security deposit from a tenant or prospective tenant shall give said tenant or prospective tenant a receipt indicating the amount of such security deposit, the name of the person receiving it, and, in the case of the agent, the name of the landlord for whom such security deposit is received, the date on which it is received, and a description of the dwelling unit." *Id.* § 5-12-080(b)(1).

¶ 41    Regarding return of the security deposit, subsection (d) provides: "The landlord shall, within 45 days after the date that the tenant vacates the dwelling unit or within seven days after the date that the tenant provides notice of termination of the rental agreement *** return to the tenant the security deposit or any balance thereof and the required interest thereon," subject to certain permitted deductions. *Id.* § 5-12-080(d).

¶ 42    Subsection (f)(1) provides a remedy for violations of prior subsections: under subsection (f)(1), "if the landlord fails to comply with any provision of Section 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081." *Id.* § 5-12-080(f)(1).

¶ 43    In her lawsuit, plaintiff claims she is entitled to damages under subsection (f)(1) because the landlord violated section 5-12-080 in two ways: namely, (1) the lease failed to include the name and address of the financial institution where the security deposit will be deposited and (2) the landlord failed to issue a proper receipt pursuant to subsection (b). Notably, plaintiff does *not* claim she seeks return of the security deposit. Indeed, her reply brief states that: "Mr. Turner's (the former roommate) security deposit remains intact, and the landlord may continue to hold that deposit. Plaintiff's complaint is strictly for the statutory violations."

¶ 44    Plaintiff essentially argues that *any* "tenant" under a lease where a security deposit has been paid has a right to seek damages for violations of RLTO section 5-12-080, regardless of whether she is the tenant who paid the deposit or whether another tenant remains in the property. Defendants emphasize the RLTO's language that a "security deposit and the interest due thereon shall continue to be the property of the tenant making such deposit" (*id.* § 5-12-080(a)(1)), as indicating that *only the tenant who paid* the deposit may seek damages for violations.

¶ 45    Although the parties make various other arguments, fundamentally, this case hinges on interpretation of section 5-12-080 of the RLTO. The parties disagree as to whether the RLTO contemplates that a tenant who did *not* pay the security deposit may seek damages under subsection (f) for the landlord's violations of other subsections, regardless of whether the tenant who *did* pay remains at the premises. We review the applicable guiding principles for such questions of interpretation.

¶ 46                              Principles of Statutory Interpretation

¶ 47    "Municipal ordinances are interpreted using the same general rules of statutory interpretation." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009) "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Id.* The best indicator of the legislative intent is the statute's language, "which must be accorded its plain and ordinary meaning." *Id.* Where the statutory language is clear and unambiguous, we "apply the statute as written without resort to extrinsic aids of statutory construction." *Id.*

¶ 48    Words and phrases "must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279-80 (2003). "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Id.* at 280. "In construing a statute we presume that the General Assembly *** did not intend absurdity, inconvenience or injustice." *Id.*

¶ 49    Statutory interpretation is a question of law subject to *de novo* review. *Landis*, 235 Ill. 2d at 6; see also *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 9 (2001) (applying *de novo* review to construction of RLTO provisions).

¶ 50   The Plain Language of RLTO Section 5-12-080 Is Directed to the Specific Tenant Who Paid the Security Deposit, Not Just Any Tenant

¶ 51 Here, we find the plain language of section 5-12-080 supports the proposition that only *the tenant making the deposit*, rather than *any* tenant under the lease, may seek damages under subsection (f) for the landlord's failure to comply with the requirements of subsections (a) through (e). This conclusion flows from careful scrutiny of the subsections (a) through (e), a violation of which forms the basis for claim for damages under subsection (f)(1). Chicago Municipal Code § 5-12-080(f)(1) (amended July 28, 2010) ("[I]f the landlord fails to comply with any provision of Section 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest ***."). The language of subsections (a) through (e) indicate an intent to protect specifically the tenant who made the security deposit.

¶ 52 As emphasized by defendants, we find it significant that the first subsection of section 5-12-080 specifies that "[a] security deposit and interest due thereon shall continue to be the property of *the tenant making such deposit*." (Emphasis added.) *Id.* § 5-12-080(a)(1). We must assume this language was not superfluous, but was deliberately chosen and intended to be given effect. See *Oswald v. Hamer*, 2018 IL 122203, ¶ 10 ("Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous.").

¶ 53 The remaining provisions indicate that they are directed to protect this same tenant, *i.e.*, the tenant "making such deposit." Indeed, subsections (a) through (e) all indicate they are intended to protect *the tenant who made the deposit*, not just any tenant on the lease.

¶ 54 For example, subsection (a)(3) requires that the name and address of the financial institution where the deposit will be held must be "disclosed in the written rental agreement signed by *the tenant*." (Emphasis added.) Chicago Municipal Code § 5-12-080(a)(3) (amended July 28, 2010). Elsewhere, subsection (a)(3) states that if a security deposit is transferred from one financial institution to another, the landlord must "notify *the tenant* in writing." *Id.* Notably, it does not state

that "all" or "any" tenants must be so notified. We think it is apparent that "the tenant" referred to in subsection (a)(3) means the same tenant "making such deposit" referred to in (a)(1).

¶ 55 Subsections (b) through (e) are also plainly directed to protect the specific tenant who made the deposit. Subsection (b)'s requirements for a security deposit receipt—which plaintiff claims defendants violated—indicates that the obligation to give a receipt is directed to the tenant who made the security deposit. Subsection (b)(1) says that "any landlord who receives a security deposit *from a tenant* \*\*\* shall give *said tenant* \*\*\* a receipt indicating the amount of such security deposit" and other information. (Emphases added.) *Id.* § 5-12-080(b)(1). That is, the receipt is owed only to "said tenant" who made the deposit, not just any tenant on the lease.

¶ 56 Subsection (c) similarly states that a landlord who holds a security deposit for more than six months "shall pay interest to *the tenant* accruing from the beginning date of the rental term." (Emphasis added.) *Id.* § 5-12-080(c). Read in conjunction with subsection (a)(1), "the tenant" entitled to interest under subsection (c) must refer specifically to the tenant who made the deposit; this must be the case, since subsection (a)(1) previously states that the deposit and interest remain "the property of the tenant making such deposit." *Id.* § 5-12-080(a)(1).

¶ 57 In similar fashion, subsection (d) requires the landlord to "within 45 days after the date that the tenant vacates the dwelling unit \*\*\* *return to the tenant the security deposit* or any balance thereof." *Id.* § 5-12-080(d). Plainly, the security deposit can only be "returned" to the same tenant who actually made the deposit.

¶ 58 The language of subsection (e) is also clearly directed to only the specific tenant who made the deposit. It provides that in the event of the sale of the leased property "by a landlord who has received a security deposit \*\*\* *from a tenant*, the successor landlord of such property shall be liable *to that tenant* for any security deposit" or interest thereon. (Emphases added.) *Id.* § 5-12-

080(e). It also requires the successor landlord to "notify *the tenant who made such security deposit*" that the deposit was transferred to the successor landlord. (Emphasis added.) *Id.*

¶ 59        In this manner, each of subsections (a) through (e) plainly refer to not just to any tenant, but to the specific tenant who made the deposit.

¶ 60        This brings us to subsection (f), which provides that "if the landlord fails to comply with any provision of Section 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081." *Id.* § 5-12-080(f)(1). We recognize that subsection (f) does not explicitly spell out that "the tenant" means the tenant who made the deposit. Yet, we emphasize that a statute should be "viewed as a whole, construing words and phrases in context to other relevant statutory provisions and not in isolation." *Oswald*, 2018 IL 122203, ¶ 10. As discussed, subsections (a) through (e) are plainly directed to the specific tenant who made the deposit. In providing for a specific damages remedy for violations of those subjections, it logically follows that subsection (f)'s phrase "the tenant" must be referring to the same tenant referenced in those prior subsections, *i.e.*, the tenant who actually paid the deposit.

¶ 61        We note that the drafters of section 5-12-080 could have easily referred to "any tenant" in specifying who could seek damages under subsection (f) for a violation of subsections (a) through (e). Instead, they referred to "*the* tenant", an apparent reference to the tenant who made the deposit.

¶ 62        This conclusion is also supported by the use of the word "damages" to describe the award available under subsection (f). Given that subsections (a) through (e) are clearly directed to protect the depositing tenant's interest in his or her property, it is hard to imagine how any other tenant could suffer "damages" by a violation of those provisions. In other words, if a tenant has not paid a security deposit, that tenant is not damaged by the landlord's failure to preserve or pay interest

on it. This follows from the proposition that the security deposit "continue[s] to be the property of the tenant making such deposit." *Id.* § 5-12-080(a)(1).

¶ 63        In short, we find the plain language of section 5-12-80 compels the conclusion that only the tenant who made the security deposit has the right to seek damages under subsection (f). In so doing, we note this opinion does not purport to create any *new* obligation on the part of the landlord to identify which specific tenant actually paid the security deposit. In any event, given the existing landlord obligations in section 5-12-080 to hold a security deposit as the "property of the tenant making such deposit" and to issue a receipt to "said tenant" (*id.* § 5-12-080(a)(1), (b)(1)), it is difficult to imagine how a landlord would not have access to that information if it otherwise complied with that section.

¶ 64    Interpreting Section 5-12-080(f) to Benefit the Tenant Who Made the Deposit is Consistent With Its Purpose

¶ 65        In addition to being supported by the plain language of section 5-12-080's various subsections, our interpretation of RLTO section 5-12-080(f) is consistent with its underlying purpose. See *Oswald*, 2018 IL 122203, ¶ 10 (in construing a statute "the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another").

¶ 66        The purpose of section 5-12-080 is clear: to protect the tenants who paid the security deposit from losing their deposits and interest thereon. In discussing section 5-12-80(f), our supreme court has explained:

> "The purpose of the law is to help protect the rights of tenants with
> respect to *their security deposits*, including the right to receive
> interest. In most cases, the amount of interest landlords owe for

security deposits is small, too small to warrant litigation against a landlord who refuses to abide by the law. Without the prospect of liability for significant additional damages, landlords would therefore have little incentive to meet their statutory obligations. \*\*\*

The city council has elected to address this problem by imposing an absolute duty on landlords to pay the interest they owe and conferring on tenants the right to recover double the amount of *their security deposits* when that duty is breached." (Emphases added.) *Lawrence*, 197 Ill. 2d at 9 (holding that landlord liability under section 5-12-080 does not require a willful mental state).

Insofar as the supreme court recognized the RLTO seeks to protect "tenants with respect to *their security deposits*," it is consistent to read the RLTO as extending to benefit only the tenant who actually made such a deposit.

¶ 67    Our court has similarly recognized: "Security deposit provisions like section 5-12-080(a) are designed to keep tenant monies out [of] the reach of creditors of landlords and prevent risks inherent in commingling, such as a landlord's intentional or inadvertent personal use of tenant funds contained in a commingled account." *Starr v. Gay*, 354 Ill. App. 3d 610, 613-14 (2004). Since the purpose of section 5-12-080 is to protect the tenant funds used to make the security deposit, it follows that the damages remedy provided therein is aimed to benefit the tenant who actually made such a deposit; *i.e.*, the specific tenant whose funds are at risk of commingling or improper use by the landlord. Again, this is entirely consistent with section 5-12-080's explicit statement that a security deposit "continue[s] to be the property of the tenant making such deposit." Chicago Municipal Code § 5-12-080(a)(1) (amended July 28, 2010).

¶ 68        For the above reasons, we think it is clear that section 5-12-080(f) provides a remedy only to the tenant or tenants who actually made the deposit. In this regard, we briefly note we are unconvinced by plaintiff's reliance on the fact that she met the definition of a "tenant" under the RLTO. Chicago Municipal Code § 5-12-030(j) (amended July 22, 2020) (" 'Tenant' means a person entitled by written or oral agreement *** to occupy a dwelling unit to the exclusion of others."). We do not dispute that plaintiff was a tenant under the lease. Yet, as discussed, the provisions of section 5-12-080 indicate they are intended to protect not simply *any* tenant under the lease, but the tenant who made the security deposit.

¶ 69        In this case, defendants' motion to dismiss provided undisputed proof that the entire security deposit at issue was paid by Turner, not by plaintiff. As plaintiff did not pay any of the security deposit, she has no basis to assert a claim against the landlord under section 5-12-80(f). Thus, defendants provided affirmative matter that negates plaintiff's lawsuit, compelling us to affirm the circuit court.

¶ 70        We recognize that the record suggests that the circuit court granted dismissal for a different reason. In remarking that plaintiff "can file it again when everyone is out", the trial court apparently was persuaded by defendant's argument that the lawsuit could not proceed because Turner remained a tenant in the subject premises. However, we need not delve into the trial court's reasoning, insofar as we may affirm dismissal for any basis apparent from the record, regardless of whether the trial court's reasoning was correct. *Jackson*, 2021 IL App (1st) 192411, ¶ 27.

¶ 71        Similarly, as our interpretation of section 5-12-080 independently necessitates dismissal, we need not address the parties' remaining contentions on appeal.

¶ 72                                CONCLUSION

¶ 73        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 74         Affirmed.

*Harding v. Meifang Shi*, **2025 IL App (1st) 240317**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-M1-118353; the Hon. Stephen A. Swedlow, Judge, presiding. |
| **Attorneys for Appellant:** | Benton N. Ring, of Benton N. Ring, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Dan E. Garbis, of The Garbis Law Firm, LLC, of Lincolnwood, for appellees. |