2026 IL App (1st) 250698-U

FIFTH DIVISION
February 13, 2026

No. 1-25-0698

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ALICE L. DALE, as Trustee of the Allan L. Lorincz Revocable Trust, dated September 24, 1998, as amended and restated, | ) ) ) ) | |
| Plaintiff and Counterdefendant-Appellee, | ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | |
| LINDA L. SHELTON, | ) ) | No. 21 CH 03572 |
| Defendant and Counterplaintiff-Appellant, | ) ) | |
| v. | ) ) | Honorable Alison C. Conlon, |
| EDUARD ADAM GLAVINSKAS, TIMOTHY RITCHEY, KERRY PECK, HOWARD HELSINGER, AARON GOLE, RITCHEY PECK, LLC, and DONALD LORINCZ, | ) ) ) ) ) | Judge Presiding. |
| Counterdefendants. | ) ) | |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred.

**O R D E R**

¶ 1    *Held*:   We affirm the circuit court's orders granting plaintiff judgment on the pleadings, granting plaintiff's motion to dismiss defendant's counterclaims, and denying defendant's motion for substitution of judge for cause.

¶ 2      Plaintiff Alice L. Dale, as trustee of a trust created by her father, Allan Lorincz, filed a complaint to terminate the life estate in a condominium that was granted to her sister, defendant Linda L. Shelton, in a prior probate proceeding following Mr. Lorincz's death. Ms. Shelton now appeals, making arguments related to the circuit court's orders (1) denying her motion to dismiss Ms. Dale's complaint, (2) dismissing Ms. Shelton's counterclaims, (3) granting Ms. Dale judgment on the pleadings, and (4) denying Ms. Shelton's motion for substitution of judge for cause. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                      A. Mr. Lorincz's Will and Trust Agreements

¶ 5      The following background is the predicate for the claims in this case and is taken from the parties' pleadings and attachments to those pleadings.

¶ 6      In 1998, Mr. Lorincz, father of both Alice Dale and Linda Shelton, created the Allan L. Lorincz Revocable Trust (the Lorincz Trust). The trust agreement originally named Mr. Lorincz as trustee and Ms. Shelton as successor trustee.

¶ 7      In 2005, Mr. Lorincz prepared a will that named Ms. Shelton as executor of his will. The will provided that, besides certain enumerated property, his estate was to be given to the trustee of the Lorincz Trust for the trustee to administer and distribute pursuant to the provisions of the trust agreement in effect when he died. According to Ms. Shelton, Mr. Lorincz also amended the Lorincz Trust to put the assets that Ms. Shelton was entitled to upon his death into "a special needs subtrust with the intent of protecting [her] inheritance due to her congenital and acquired physical disabilities."

¶ 8      In 2007, Mr. Lorincz prepared a second amended trust agreement, that again named Ms. Shelton as successor trustee. It also named her as a co-trustee, along with Ms. Dale's husband

Doug Dale, of a subtrust, the Linda L. Shelton Trust (the Shelton Trust), although it provided that she could not serve as trustee of the Shelton Trust during any period in which her financial condition and physical or mental disabilities qualified her to receive public assistance funds. Ms. Dale was named as her husband's successor as co-trustee of the Shelton Trust, in the event that he was unable or unwilling to serve. During any period in which Ms. Shelton was able to serve as trustee of the Shelton Trust she could remove her co-trustee and replace that person with a successor trustee of her choosing. She claims that she removed Ms. Dale as co-trustee in 2010. The agreement further provided that, upon Mr. Lorincz's death, Ms. Shelton could live, rent-free, in a house that, according to Ms. Shelton, was then Mr. Lorincz's home. Mr. Lorincz also amended his will to name Ms. Dale as the successor executor to Ms. Shelton.

¶ 9    In June 2010, Mr. Lorincz prepared a third amended trust agreement, that named himself and Ms. Dale co-trustees of the Lorincz Trust and Ms. Dale the sole successor trustee. This third amended trust agreement further provided that, upon Mr. Lorincz's death, if Ms. Shelton was living and any portion of the trust estate consisted of an interest in a certain condominium, the trustee was to "pay off all mortgage indebtedness" on the condo and "any interest in such property" was to be "retained in trust by the Trustee" in the Shelton Trust, the beneficiary of which was Ms. Shelton and which was to be "held, administered and distributed" pursuant to Article XV of the trust agreement. That article provided that, while Ms. Shelton lived, she could reside in the condo "rent-free; provided that during the term of the [Shelton Trust], [Ms. Shelton] shall be responsible for paying all real estate taxes" and other costs associated with the condo.

¶ 10                          B. The Probate Proceedings

¶ 11    In September 2010, Mr. Lorincz died. His will was admitted to probate in case No. 10 P 6117. That will contained a residuary bequest to the Lorincz Trust. Through counsel, Ms. Shelton

3

filed a petition, in the probate proceeding, to contest the validity of the Lorincz Trust. Ms. Dale participated in that proceeding as the executor of Mr. Lorincz's will and trustee of the Lorincz Trust. The record is unclear as to when Ms. Dale was named executor of the will—Ms. Shelton's pleadings allege that it occurred in 2010, and also suggest that Ms. Dale may have been named because Ms. Shelton was a felon and therefore could not serve in that position.

¶ 12     Ms. Shelton brought three claims in her trust contest: undue influence, interference with testamentary expectation, and lack of testamentary capacity. Ms. Shelton alleged that, beginning in 2006, she had lived with Mr. Lorincz and cared for him while he was ill with Parkinson's disease. She assisted with his personal and financial affairs. When Ms. Shelton became incarcerated from May 2010 to November 2010, Ms. Dale became Mr. Lorincz's caretaker and "controller of [his] daily activities and *** property."

¶ 13     Ms. Shelton alleged in the trust contest that, while Mr. Lorincz was elderly, depressed, and starving himself before his death, Ms. Dale hired an attorney to create the third amended trust agreement. Ms. Shelton claimed that Ms. Dale "defame[d]" Ms. Shelton to Mr. Lorincz and led him to believe that Ms. Shelton had exploited him. Ms. Shelton alleged that, if Mr. Lorincz had not been unduly influenced by Ms. Dale, he would not have removed Ms. Shelton as successor trustee, appointed Ms. Dale executor, or amended the distribution to Ms. Shelton from Mr. Lorincz's house to the condo, because he knew that Ms. Shelton was physically disabled and could not navigate the stairs to the walk-up condo. Ms. Shelton requested the third amended trust agreement be regarded as invalid and a nullity.

¶ 14     On January 6, 2012, the probate court dismissed Ms. Shelton's trust contest with prejudice pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007)—which allows for dismissal for a claimant's failure to exercise reasonable diligence in serving their claim on the defendant—and

for want of prosecution. On February 28, 2012, the probate court also issued an order imposing sanctions on Ms. Shelton and finding that she brought her trust contest and other claims for the purposes of harassment, delay, and increasing the cost of litigation. After these orders, Ms. Shelton filed multiple appeals from the probate proceedings. These appeals were consolidated and it appears from this court's records that Ms. Shelton never filed any briefs, and the consolidated appeal was dismissed on May 30, 2013.

¶ 15 On April 21, 2014, the probate court issued an order on the "presentation of the Trustee's Second and Current Account of the [Lorincz Trust] and Petition to Approve Second Account of the [Lorincz Trust] With Final Distribution to the [Shelton Trust]." The court noted that "due notice [had] been given," and that appellate court proceedings related to the estate had concluded and the probate court's orders "remain[ed] unchanged." The order approved an accounting of the trust from September 2011 to September 2013. The order further stated:

> "The Court having found that Linda Shelton's only interest in the Allan L. Lorincz Revocable Trust, and any sub-trusts created thereunder, is a life estate interest in the Trust-owned [condominium], Alice L. Dale, as Trustee of the Allan L. Lorincz Revocable Trust, is authorized to transfer a life estate interest in said Trust-owned real property to the Trustee of the Linda Shelton Trust."

That transfer was to "constitute a final distribution to Linda Shelton and Linda Shelton shall not be entitled to any further distributions from the Allan L. Lorincz Revocable Trust, or any sub-trusts created thereunder."

¶ 16 In another order entered on April 21, 2014, the probate court, on application of Ms. Dale, found that "all acts necessary for the full administration of the Estate ha[d] been performed according to law," ordered Ms. Dale discharged as Independent Representative of the estate, and

closed the estate.

¶ 17                                C. The Proceedings in This Case

¶ 18     On July 21, 2021, Ms. Dale, as trustee of the Lorincz Trust, filed a complaint to terminate Ms. Shelton's life estate in the condo. Citing the third amended trust agreement and the probate court's orders sanctioning Ms. Shelton and finalizing her distribution, Ms. Dale alleged that Ms. Shelton was obligated to pay real estate taxes on the condo during the term of her life tenancy and failed to do so.

¶ 19     In her complaint, Ms. Dale alleged that in 2016, the nonpayment of taxes resulted in a mortgage foreclosure action being filed against the Lorincz Trust, requiring the Lorincz Trust to make additional escrow payments, pay additional lender fees, and pay additional attorney fees to reinstate the mortgage on the condo. As part of the settlement of the foreclosure proceeding, the trust was required to maintain an amount in escrow that raised the trust's monthly mortgage payments for the condo by 43%. By May 2021, the trust had lost $44,704.54 due to Ms. Shelton's failure to pay real estate taxes for the condo, which she continued to refuse to pay.

¶ 20     Ms. Dale requested the court find that Ms. Shelton had breached her duties as life tenant of the condo, terminate her life estate in the condo, revert title to the property in fee simple to the Lorincz Trust, enter judgment against Ms. Shelton and in favor of the Lorincz Trust in the amount of $44,704.54, and award Ms. Dale fees and costs for bringing the action.

¶ 21     Ms. Shelton represented herself *pro se* in the circuit court, as she does on appeal. She filed an answer to the complaint in which she admitted she had not paid any real estate taxes for the condo, alleging that failure was due to poverty stemming from prior legal proceedings, including the probate proceedings. Ms. Shelton also alleged in her answer that, in violation of the trust agreement, Ms. Dale failed to pay off the mortgage on the condo. Further, Ms. Shelton alleged in

her answer that she had removed Ms. Dale as co-trustee of the Shelton Trust and appointed new co-trustees in 2010 and 2012.

¶ 22 Ms. Shelton also filed a countercomplaint, which was amended several times. In addition to Ms. Dale, Ms. Shelton named as counterdefendants Ms. Dale's attorney (who continues to represent Ms. Dale on appeal); Ms. Shelton and Ms. Dale's brother, Donald Lorincz; several attorneys who previously represented Mr. Lorincz, Donald Lorincz, or Ms. Dale; and the law firm where two of those attorneys were employed.

¶ 23 Ms. Shelton raised eight counterclaims. Counts I through III were the same as those she asserted in her trust contest: undue influence, interference with testamentary expectation, and lack of testamentary capacity. Counts V through VIII were claims for a breach of fiduciary duty to the beneficiaries of the Lorincz Trust, fraud, the violation of section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO Act) (18 U.S.C. § 1962(c) (2018)), and a conspiracy to violate section 1962(c) of the RICO Act (*id.* § 1962(d)). In those counts, Ms. Shelton alleged that the attorney counterdefendants, in a long-running scheme to extract fees from Mr. Lorincz's estate, manipulated Ms. Dale into forging the third amended trust agreement, "fraudulently" acting as trustee, removing Ms. Shelton's property from the house, and bringing this suit against her. The counterdefendants also misrepresented the validity of the third amended trust agreement to the courts and bribed the judge in the probate case. She noted that two of the attorneys, their relatives, their law firm, and other attorneys at the firm contributed to the judge's campaign fund for an election to the Illinois Supreme Court while the probate proceedings were ongoing.

¶ 24 In Count IV, Ms. Shelton alleged the breach of an employment contract between Mr. Lorincz and Dr. Maisha Hamilton. According to Count IV, Dr. Hamilton had a contract to care for

Mr. Lorincz, hold his power of attorney, and supervise his assets in 2010 while Ms. Shelton was incarcerated. The allegation is that under the agreement between Mr. Lorincz and Dr. Hamilton, Dr. Hamilton "would make sure" that Ms. Shelton received Mr. Lorincz's house upon his death, making Ms. Shelton an intended beneficiary of the contract. Dr. Hamilton and Mr. Lorincz executed a fidelity bond as evidence of their agreement but "the written employee contract was not signed due to illegal active interference by [Donald Lorincz and Ms. Dale] and the police they called." Dr. Hamilton performed her duties under the contract "to the extent that [Ms. Dale] would allow," but the counterdefendants breached the contract by failing to pay Dr. Hamilton and removing property belonging to the estate and Ms. Shelton from Mr. Lorincz's house.

¶ 25    Ms. Dale moved to dismiss Ms. Shelton's countercomplaint under sections 2-619(a)(4) and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4), (9) (West 2020)). Ms. Dale argued that, besides her, the counterdefendants were not subject to the court's personal jurisdiction, as Ms. Shelton did not properly serve them. Further, Ms. Shelton lacked standing to bring the breach of contract claim on behalf of Dr. Hamilton. Ms. Dale argued that the remainder of Ms. Shelton's counterclaims were barred by *res judicata* and collateral estoppel because they were premised on the same allegations as her trust contest, namely, that the third amended trust agreement was invalid.

¶ 26    On April 19, 2023, the court dismissed Ms. Shelton's counterclaims with prejudice "on the grounds of *res judicata*, collateral estoppel and the statute of limitations." It additionally dismissed with prejudice, for lack of standing, her breach of contract claim relating to Dr. Hamilton. The court did not address the other counterdefendants that Ms. Shelton named in her countercomplaint.

¶ 27    On October 19, 2021, and then, again, on May 15, 2023, Ms. Shelton moved to dismiss Ms. Dale's complaint for lack of subject matter jurisdiction pursuant to section 2-619(a)(1) of the

Code (735 ILCS 5/2-619(a)(1) (West 2020)). She argued that the court lacked subject matter jurisdiction because the condo was owned by the Shelton Trust and she had removed Ms. Dale as co-trustee of the Shelton Trust in 2010, and Ms. Dale therefore lacked authority to bring this suit.

¶ 28    On May 16, 2023, Ms. Dale moved for summary judgment or judgment on the pleadings pursuant to sections 2-1005 and 2-615(e) of the Code (735 ILCS 5/2-615(e), 2-1005 (West 2020)). Ms. Dale argued there were no genuine issues of material fact and she was entitled to judgment as a matter of law, as Ms. Shelton had admitted that she failed to pay the real estate taxes on the condo or reimburse the Lorincz Trust for the taxes.

¶ 29    On May 18, 2023, Ms. Shelton moved to reconsider the court's dismissal of her countercomplaint.

¶ 30    On September 13, 2023, the court issued a written order denying Ms. Shelton's second motion to dismiss Ms. Dale's complaint, denying Ms. Shelton's motion to reconsider the dismissal of her countercomplaint, and granting Ms. Dale's motion for judgment on the pleadings. The order noted that it was a written statement of the court's oral rulings from September 6, 2023, prepared for Ms. Shelton's benefit, in response to Ms. Shelton's request that the court speak slowly enough for her to write down everything that the court was saying.

¶ 31    In its September 13, 2023, written order, the circuit court denied Ms. Shelton's motion to dismiss Ms. Dale's complaint, on the basis that Ms. Dale adequately pleaded that the Lorincz Trust owned the condo, that Ms. Dale was trustee of the Lorincz Trust, and that Ms. Shelton's only interest in the Lorincz Trust was a life estate in the condo. The court found that Ms. Shelton's arguments that the third amended trust agreement was invalid and that Ms. Dale was not the trustee were not properly brought on a motion to dismiss under section 2-619 because they did not accept the truth of Ms. Dale's allegations. On Ms. Shelton's motion to reconsider the dismissal of her

counterclaims, the court noted her trust contest had been dismissed with prejudice in a January 6, 2012, order, and the probate court recognized Ms. Dale as trustee in an April 21, 2014, order. On Ms. Dale's motion for judgment on the pleadings, the court found that Ms. Shelton held a life estate in the condo (based on the probate court's April 21, 2014, order), was responsible for paying the condo's real estate taxes during her life tenancy, and admitted in her answer that she failed to do so. Accordingly, the court found that it was clear from the pleadings that Ms. Shelton breached her duty as a life tenant and that her life estate should be terminated.

¶ 32   Ms. Dale subsequently filed a written motion for money damages. Ms. Shelton filed motions for approval of a proposed bystander's report for September 6, 2023, and "to correct legal errors" in the court's rulings in the September 13, 2023, written order.

¶ 33    On December 21, 2023, while these motions were pending, Ms. Shelton moved for substitution of judge for cause. She claimed that the assigned judge, the Honorable Alison Conlon, was "ignoring the law and aiding and abetting criminal conduct" by claiming to have jurisdiction despite Ms. Dale's lack of authority to bring this suit. On the same day, Ms. Shelton moved for a rule to show cause why Ms. Dale's attorney should not be held in contempt of court for fraudulently stating that Ms. Dale was the trustee of the trust that owned the condo, and failing to instruct Ms. Dale to pay off the mortgage on the condo.

¶ 34   On April 3, 2024, another judge in the circuit court denied Ms. Shelton's motion to substitute judge for cause. On October 2, 2024, Judge Conlon filed a written order striking Ms. Dale's motion for money damages because she failed to provide evidence or a legal basis for the damages; denying Ms. Shelton's motion for approval of a bystander's report, as her proposed report was inaccurate; and denying Ms. Shelton's motion to correct errors in the court's rulings memorialized in the September 13, 2023, written order. On March 21, 2025, Judge Conlon denied

Ms. Shelton's motion for a rule to show cause why Ms. Dale's attorney should not be held in contempt of court. Ms. Shelton now appeals.

¶ 35                                    II. JURISDICTION

¶ 36    Ms. Dale suggests that we "[a]rguably" lack jurisdiction because Ms. Shelton failed to file a timely notice of appeal. She notes that the circuit court's October 2, 2024, order resolved every issue except Ms. Shelton's motion for a rule to show cause why Ms. Dale's attorney should not be held in contempt. Ms. Shelton filed her notice of appeal on April 16, 2025, well more than 30 days later. However, the court did not enter a final and appealable judgment until it denied Ms. Shelton's motion for a rule to show cause. See *In re Marriage of Carrillo*, 372 Ill. App. 3d 803, 813 (2007) (a judgment that is final as to all claims besides a pending petition for a contempt finding is not appealable until the court resolves the petition for a contempt finding). Ms. Shelton filed her notice of appeal within 30 days of the court's March 21, 2025, order denying that motion. We therefore have jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303(a) (eff. July 1, 2017).

¶ 37                                    III. ANALYSIS

¶ 38    In her *pro se* appeal, Ms. Shelton claims that the circuit court: (1) lacked jurisdiction because Ms. Dale was not the trustee of the Shelton Trust, which, according to Ms. Shelton, owns the condo; (2) erred in denying her motion to dismiss Ms. Dale's complaint; (3) erred in granting Ms. Dale's motion to dismiss her countercomplaint; (4) erred in granting judgment for Ms. Dale; (5) erred in denying her motion to substitute the judge for cause; and (6) entered a decision that was against the manifest weight of the evidence when it found that Ms. Dale was the trustee of the trust that owned the condo.

¶ 39    The majority of these arguments rest on the same false premise, which is that Ms. Shelton

can continue, in this proceeding, to question the final determination by the probate court that she was entitled only to a life estate in the condo, that Ms. Dale was the trustee of the Lorincz Trust, and that the Lorincz Trust owned the condo. These determinations can no longer be litigated. We will begin by addressing the *res judicata* and collateral estoppel impact of the probate court proceedings on this case and then address Ms. Shelton's remaining arguments.

¶ 40    A. The Decisions of the Probate Court Bar Most of Ms. Shelton's Claims and Defenses in

This Case

¶ 41    The doctrine of *res judicata* prevents a subsequent suit between two parties involving a cause of action on which a court of competent jurisdiction has already rendered a final judgment on the merits. *Chicago Board of Education v. Chicago Teachers Union, Local No. 1, IFT-AFT, AFL-CIO*, 2024 IL App (1st) 240613, ¶ 23. The bar includes both matters that were actually decided and matters that could have been decided in the first action. *Id. Res judicata* applies where there is "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies." (Internal quotation marks omitted.) *Id.*

¶ 42    The related doctrine of collateral estoppel also bars the relitigation of issues where there is a final judgment on the merits, the issue decided in the prior adjudication and the issue raised in the present case are identical, and the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication. *LeMaster v. Hynds, Yohnka, Bzdill & McInerney, LLC*, 2025 IL App (1st) 242172, ¶ 26. Collateral estoppel can be applied once the potential for appellate review has been exhausted. *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986). "[T]he pertinent inquiry for collateral estoppel purposes is whether some controlling fact or question material to the determination of both causes has been adjudicated against that party in the

12

former suit by a court of competent jurisdiction." (Internal quotation marks omitted.) *LeMaster*, 2025 IL App (1st) 242172, ¶ 28.

¶ 43    Whether *res judicata* and collateral estoppel bar claims are questions of law that we review *de novo*. *Lelis v. Board of Trustees of Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 13. As our review is *de novo*, we may affirm on any basis apparent in the record regardless of whether the circuit court relied on that reason. *Harding v. Shi*, 2025 IL App (1st) 240317, ¶ 35.

¶ 44    The circuit court properly found that Ms. Shelton could not relitigate the claims that were made in the probate court or the determinations by that court regarding her interest in the condo. On January 6, 2012, the probate court dismissed with prejudice Ms. Shelton's claims regarding the validity of the third amended Lorincz Trust. In addition, on April 21, 2014, the probate court recognized that Ms. Dale was the trustee of the Lorincz Trust and approved a final distribution to the Shelton Trust, under which the probate court ruled that Ms. Shelton's "only interest" in the Lorincz Trust or any subtrusts was a life estate in the condo.

¶ 45    These findings foreclose most of Ms. Shelton's claims and arguments in this case. Based on her arguments in this appeal, however, it appears that Ms. Shelton may misunderstand some of the probate court rulings. The probate court did not grant the Shelton Trust ownership of the condo. It granted the trustee of the Shelton Trust a life estate interest in the condo, confirming Ms. Shelton's right to live in the condo rent-free pursuant to the terms of the trust agreement. The Lorincz Trust continued to own the condo. The other April 21, 2014, order by the probate court did not terminate the Lorincz Trust and discharge Ms. Dale as trustee. It merely closed the estate and ended the probate proceedings.

¶ 46    Returning to the issue of *res judicata*, it appears that the probate court dismissed Ms. Shelton's trust contest on January 6, 2012, pursuant to Rule 103(b) and for want of prosecution.

While Ms. Shelton does not make this argument, we are aware that an involuntary dismissal with prejudice pursuant to Rule 103(b) has been held not to necessarily have a *res judicata* effect. As this court has recognized, a Rule 103(b) ruling does not constitute a judgment on the merits because the reason for dismissal bears no relationship to the merits. *Brady v. Joos*, 273 Ill. App. 3d 793, 797-98 (1995) (citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 77 (1994)).

¶ 47     However, the probate proceeding is still a bar in this case because, in addition to dismissing Ms. Shelton's claims, on April 21, 2014, the probate court recognized that Ms. Dale was the trustee of the Lorincz Trust and that the Lorincz Trust owned the condo, and found that Ms. Shelton's only interest in the Lorincz Trust and any subtrusts was a life estate in the condo. Ms. Shelton had filed appeals from the probate court following the dismissal of her claims, and the probate court noted they were resolved when it entered its finding that Ms. Shelton's only interest was a life estate in the condo. The probate court also closed the estate on April 21, 2014. Ms. Shelton does not appear to have appealed following the court's April 21, 2014, orders.

¶ 48     The probate court's orders show there was a final determination by that court as to who the trustee of the Lorincz Trust was, who owned the condo, and what Ms. Shelton's rights were. Any contention by Ms. Shelton that questions any final determination by the probate court is barred by *res judicata* and is not a proper basis for either a claim or a defense in this case. That includes Ms. Shelton's argument that the circuit court lacked jurisdiction because Ms. Dale and her attorney committed fraud against the circuit court by claiming that Ms. Dale was the trustee of the trust that owned the condo.

¶ 49     As to the other people that Ms. Shelton named as counterdefendants besides Ms. Dale, they are more properly considered potential third-party defendants than counterdefendants, as they were not parties to the proceeding before Ms. Shelton filed her countercomplaint. *Carmichael v. Union*

14

*Pacific RR. Co.*, 2019 IL 123853, ¶ 32 (noting that a counterclaim is an action brought against another existing party). But Ms. Shelton does not appear to have served them, and the record does not reflect that they ever appeared in the proceedings. The circuit court therefore had no personal jurisdiction over these counterdefendants. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18 ("Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction."). That is one basis to affirm the dismissal of her claims against them. See *Harding*, 2025 IL App (1st) 240317, ¶ 35 (noting that the appellate court can affirm on any basis apparent in the record).

¶ 50    The dismissal of Ms. Shelton's claims against these other counterdefendants is also appropriate under the doctrine of collateral estoppel. *Res judicata* does not apply to these counterdefendants because they were not parties to the probate proceedings. However, these claims are premised on the same issues relating to the validity of the trust agreement and Ms. Dale's status as trustee that the probate court resolved. See *LeMaster*, 2025 IL App (1st) 242172, ¶ 26 (noting that collateral estoppel applies when there is a final judgment on the merits, that the issue raised be identical to the issue decided in the prior case, and the party against whom collateral estoppel is asserted was a party in the prior case). Thus, as with the claims against Ms. Dale, these claims cannot now be asserted in this case.

¶ 51    Ms. Shelton's argument against the application of *res judicata* and collateral estoppel is that the probate court's orders were void as the result of fraud and thus need not be followed here. She claims that Ms. Dale and the other counterdefendants lied to the probate court in stating that Mr. Lorincz had agreed to the third amended trust agreement. However, this does not impact the application of *res judicata* and collateral estoppel in this case.

¶ 52    The kind of fraud that Ms. Shelton alleges, "such as false testimony or concealment" that

occurs after a court validly acquires jurisdiction, is called "intrinsic" fraud. *Leroy K.D. v. Nicole B.*, 2021 IL App (3d) 200010, ¶ 37. Intrinsic fraud renders an order or judgment merely voidable, not void. *In re M.B.*, 235 Ill. App. 3d 352, 377-78 (1992). Orders that are voidable "may only be challenged directly, and the challenger must proceed under section 2-1401 [of the Code (735 ILCS 5/2-1401 (West 2020))] and comply with all the requirements of that section." *In re Custody of Ayala*, 344 Ill. App. 3d 574, 584 (2003). Thus, even if Ms. Shelton's fraud allegations are true, she is required to bring them in a petition under section 2-1401 of the Code, seeking to vacate the allegedly void orders. Ms. Shelton's allegations of fraud have no effect on the *res judicata* and collateral estoppel impact of the probate court proceedings in this case.

¶ 53    The final determinations of the probate court mean that many of Ms. Shelton's claims and defenses are barred in this case and resolve most of the arguments Ms. Shelton makes on appeal. We turn now to the other arguments that Ms. Shelton makes, which we also find to be without merit.

¶ 54                      B. The Breach of Contract Count

¶ 55    In count IV, Ms. Shelton alleged that the counterdefendants breached an employment contract that Dr. Hamilton had with Mr. Lorincz to care for Mr. Lorincz, hold his power of attorney, and supervise his assets. This claim may not be barred by *res judicata* or collateral estoppel, but it fails for other reasons. Specifically, Ms. Shelton had no standing to raise this claim because she was not a party to the alleged contract and has not adequately pleaded that she was in privity with either party or was an intended third-party beneficiary. See *Stop NorthPoint, LLC v. City of Joliet*, 2024 IL App (3d) 220517, ¶ 70 (noting that only a party to a contract, one in privity with a party to a contract, or a third-party beneficiary of a contract has standing to sue on the contract).

¶ 56    Ms. Shelton alleges that under Dr. Hamilton's agreement with Mr. Lorincz, the doctor "would make sure" that Ms. Shelton inherited the house rather than the condo. This is a conclusory assertion that neither the circuit court nor this court need accept as true. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16 (a motion to dismiss under section 2-619(a) does not admit conclusory factual allegations). Ms. Shelton would only be an intended beneficiary if she was named in the contract and liability to her "affirmatively appear[ed]" from the contract's language and the circumstances surrounding the contract's execution. *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 14. Only intended third-party beneficiaries have standing to sue on a contract. *Id.* ¶¶ 14-16. Ms. Shelton cites no specific language from the contract and no facts surrounding its execution that support a showing that she was an intended beneficiary. At most, Ms. Shelton's conclusory allegation suggests that she is an incidental beneficiary of the contract, who "has no rights and may not sue to enforce them." *Id.* ¶ 14. The circuit court properly dismissed this claim for lack of standing.

¶ 57                    C. Judgment in Favor of Ms. Dale

¶ 58    Ms. Shelton argues that the circuit court erred in granting Ms. Dale "summary judgment," which we will construe as an argument that the court erred in granting Ms. Dale judgment on the pleadings, which is what Ms. Dale sought in the alternative in the motion that the court granted. We also note that the denial of Ms. Shelton's motion to dismiss Ms. Dale's complaint, which Ms. Shelton also challenges on appeal, has merged into the court's final judgment granting Ms. Dale judgment on the pleadings. *County of Peoria v. Couture*, 2022 IL App (3d) 210091, ¶ 39.

¶ 59    Ms. Shelton offers no substantive argument on this issue besides directing us to her arguments that the circuit court lacked jurisdiction. To the extent that Ms. Dale is again asking us to reconsider the rulings of the probate court we are barred by the doctrines of *res judicata* and

collateral estoppel. However, this ruling granting Ms. Dale judgment went beyond following the rulings of the probate court to find that Ms. Shelton should lose her life estate in the condo.

¶ 60    Under section 2-615(e) of the Code, "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2020). Judgment on the pleadings is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21. In deciding a motion for judgment on the pleadings, the court "may consider only those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record." *Id.* The court must also take as admitted all the nonmoving party's well-pleaded facts "and the fair inferences drawn therefrom." *State Bank of Cherry v. CGB Enterprises*, 2013 IL 113836, ¶ 65. We review the grant of a judgment on the pleadings *de novo*. *Hooker*, 2016 IL 121077, ¶ 21.

¶ 61    Here, there are no genuine issues of material fact that Ms. Shelton had lost any right to retain a life estate in the condo. The third amended trust agreement provided that Ms. Shelton could live in the condo, rent-free, "provided that during the term of the [Shelton Trust], [Ms. Shelton] shall be responsible for paying all real estate taxes" associated with the condo. The probate court recognized that Ms. Shelton had a life estate interest in the condo. Ms. Shelton admitted in her answer that she had not paid property taxes on the condo.

¶ 62    The Lorincz Trust conditioned Ms. Shelton's residency in the condo on her paying the real estate taxes. Further, as the circuit court noted, "a life tenant has a duty to pay real estate taxes assessed against the land during his life tenancy." *Hausmann v. Hausmann*, 231 Ill. App. 3d 361, 366 (1992). Our supreme court has held that a life estate may be "defeated" where the instrument creating the life estate provides that a certain event should terminate the tenancy and that event occurs, "or where the life tenant has failed in the performance of duties upon the performance of

which the life tenancy depends." *Cummings v. Hamilton*, 220 Ill. 480, 484 (1905).

¶ 63    We note that Ms. Shelton has also alleged that Ms. Dale failed to pay off the mortgage on the condo following Mr. Lorincz's death, which the trust agreement required. Ms. Shelton appears to be correct, given that Ms. Dale sought monetary damages in this case because Ms. Shelton's failure to pay the real estate taxes resulted in greater mortgage payments. However, Ms. Shelton does not explain, and we fail to see, how this failure by Ms. Dale impacts Ms. Dale's right to terminate Ms. Shelton's life estate. Further, the circuit court declined to find Ms. Shelton liable to Ms. Dale for any monetary damages related to the mortgage.

¶ 64    Because Ms. Shelton had a duty to pay the real estate taxes as long as she lived in the condo, which she has admitted she did not do, Ms. Shelton breached a duty upon which her life tenancy depended. Therefore, the court did not err in granting Ms. Dale's motion for judgment on the pleadings and terminating Ms. Shelton's life estate interest in the condo.

¶ 65                                  D. Substitution of Judge

¶ 66    Ms. Shelton argues that the circuit court erred in denying her motion to substitute Judge Conlon, based on the arguments she made in that motion, *i.e.*, that Judge Conlon demonstrated bias against her by claiming to have jurisdiction over the case, ignoring the evidence Ms. Shelton presented that the Shelton Trust owned the condo and that Ms. Dale was not trustee of the Shelton Trust, and "aiding and abetting" the "criminal conduct" of the counterdefendants she named.

¶ 67    Section 2-1001 of the Code allows a litigant to file a petition for substitution of judge for cause. 735 ILCS 5/2-1001(a)(3)(i) (West 2020). To show cause, a movant must establish actual prejudice, by rebutting a presumption of impartiality with evidence of "prejudicial trial conduct or personal bias." *In re Marriage of O'Brien*, 2011 IL 109039, ¶¶ 30-31. The alleged bias or prejudice "must normally stem from an extrajudicial source, *i.e.*, from a source other than from what the

judge learned from her participation in the case before her." *In re Estate of Wilson*, 238 Ill. 2d 519, 554 (2010). An opinion formed from the course of the proceedings at issue is not "a basis for a bias or partiality motion unless [the judge] display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." (Internal quotation marks omitted.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31. "A judge's previous rulings almost never constitute a valid basis for a claim of judicial bias or partiality." *In re Estate of Wilson*, 238 Ill. 2d at 554.

¶ 68    Here, Ms. Shelton points to no facts suggesting actual prejudice on the part of Judge Conlon. Instead, she rests solely on Judge Conlon's rulings against her. This is not a basis for removal of a judge.

¶ 69    Moreover, the record on appeal lacks a transcript of the proceedings or any acceptable substitute from which we could determine that Judge Conlon displayed bias against Ms. Shelton. As the appellant, it was Ms. Shelton's duty to provide a complete record on appeal to support her claims of error, without which we must presume the lower court's order conformed with the law and had sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 70    Ms. Shelton notes that she filed a proposed bystander's report, which could be a substitute for a report of proceedings (Ill. S. Ct. R. 323(c) (eff. July 1, 2017)), in the circuit court but Judge Conlon declined to approve it. She argues that a judge is "unlikely to approve any bystander report that would prove" that the judge was biased. In any event, however, Ms. Shelton makes no allegations that Judge Conlon made statements during hearings that established cause for substitution of judge. Her arguments rely only on the allegation that Judge Conlon ignored the law and the evidence of fraud that she had presented. As noted, that argument is premised only on the fact that Judge Conlon made rulings against her, which is insufficient to establish actual prejudice.

¶ 71                                        IV. CONCLUSION

¶ 72    For the foregoing reasons, we will not disturb the circuit court's orders dismissing Ms. Shelton's counterclaims, granting Ms. Dale judgment on the pleadings, or denying Ms. Shelton's motion for substitution of judge. We affirm the judgment of the circuit court of Cook County.

¶ 73    Affirmed.